STROBRIDGE *et al. v.* L. H. SMITH WOODEN-WARE Co., Limited.

*(Circuit Court, D. Pennsylvania. May 11, 1891.)*

PATENTS FOR INVENTION—INFRINGEMENT—COFFEE-MILL.
  Reissued letters patent No. 7,583, dated March 27, 1877, granted to Turner Strobridge for a coffee-mill having a detachable hopper and grinding shell formed in a single piece, and suspended within the box by the upper part of the hopper or a flange thereon, are not infringed by a coffee-mill having such a hopper and grinding shell, kept in place within the box by a clamping mechanism, whereby the flange of the hopper is pressed up against the under side of the top of the box. The cases of *Strobridge* v. *Lindsay*, 2 Fed. Rep. 692, and *Same* v. *Landers*, 11 Fed. Rep. 880, distinguished.

In Equity.
*W. Bakewell & Sons*, for complainants.
*Wm. L. Pierce*, for defendant.
Before ACHESON and REED, JJ.

ACHESON, J. The bill charges the defendant with the infringement of reissued letters patent No. 7,583, dated March 27, 1877, being a reissue, on application filed March 1, 1877, of original patent of February 2, 1875, to Turner Strobridge, for an improvement in coffee-mills. The specification and drawings of the reissued patent describe and show a coffee-mill in which the hopper and grinding shell are formed in a single piece, and suspended within the box by means of lugs formed upon the

upper margin of the hopper, and resting upon the upper surface of the top of the box. The specification also mentions "a projecting flange" as an alternative means for effecting the suspension of the combined hopper and grinding shell. "The top, C, of the box, is cut away, so that the hopper may be suspended therein by means of a projecting flange or lugs on the hopper. * * * D represents the hopper or grinding shell, provided with a flange or lugs, *d*, by which it is suspended in the box, A." No other method of suspension is shown or suggested in the drawings or specification, except that the patentee states that, to facilitate the suspension of the hopper, he preferably bevels the opening in top, C, to correspond with the curve of the hopper, which he provides with a series of projections for the purpose of taking hold upon the beveled edge of the top, C, to assist in preventing any movement of the hopper. The plaintiffs insist that the defendant infringes the first four claims of the patent, which are as follows:

"(1) A coffee or similar mill, having a detachable hopper and grinding shell formed in a single piece, and suspended within the box by the upper part of the hopper or a flange thereon, substantially as and for the purpose specified. (2) In a coffee-mill, the combination, with the box and its top, of a detachable hopper suspended within the box by its upper part, and a bridge supported on the box, substantially as and for the purpose specified. (3) In coffee and spice mills, the combination of the box, having a top, with the hopper suspended therein, by means of a projecting flange or lugs, which rest upon or take into the top, substantially as described. (4) The combination of the box, having a top, with the hopper suspended therein, by means of a projecting flange or lugs, which rest upon or take into the top, and a cover, substantially as described."

In the mill sold by the defendant, and here complained of, there is a detachable hopper and grinding shell formed in a single piece, and suspended or held in place within the box in the manner following: The hopper near its upper edge has a flange which rests against the lower surface of the wooden top of the box, and the bottom of the hopper is provided with a cross-bar or diametrical bridge having a central opening. On the upper surface of the top of the box rests a cover or a bridge having a corresponding central opening. Through these two openings passes a hollow spindle or sleeve, having at its upper end a collar resting upon a seat on the cover, or the bridge above the top, and at its lower end two laterally projecting lugs. By the rotation of the spindle these lugs move along two inclined faces on the under surface of the lower bridge, and thus the two bearings are drawn together, and the wooden top of the box is firmly clamped between the annular flange of the cover or rim of the bridge and the flange of the hopper.

Two defenses are set up: *First*, non-infringement; and, *secondly*, the invalidity of the reissue by reason of its undue expansion. The reissue was sustained by this court in *Strobridge* v. *Lindsay*, 2 Fed. Rep. 692, and by Judge BLATCHFORD in *Strobridge* v. *Landers*, 11 Fed. Rep. 880; and the first claim held to be infringed by a mill which embodied the substance of the invention, but in which the hopper was cast with a flange projecting from its upper edge sufficiently to cover and form the

top of the box, this structural change being adjudged formal and colorable. Judge BLATCHFORD also passed on the objection "that the reissue was not for the same invention as that described in the original, and that the reissue contains new matter not found, suggested, or described in the original;" and he held that this defense was not tenable. In view, then, of those decisions, we think the only question to be regarded as here open arises upon the defense of non-infringement.

In considering this question, which involves the true scope of the claims, we are first to consider the terms of the patent itself. Now, a careful study of the specification and the illustrative drawings leads us to the conviction that the only conception which the inventor had in his mind was the suspension or support of the combined hopper and grinding shell by the projecting flange or lugs resting upon the top of the box. Certainly no other method of suspending the hopper is disclosed by the patent. The words, "suspended within the box by the upper part of the hopper or a flange thereon," indicate not simply the point of connection between the hopper and the top of the box, but the means or mechanical device by which the suspension is effected. The natural meaning of the language (especially when read in connection with the specification and drawings) is that the hopper is held up or sustained in place by its engagement with the upper side of the top of the box. But, if this be the correct rendering, then is it plain that the defendant's coffee-mill is not within any of the claims of the patent. Then, again, the prior state of the art was such as to preclude any broad claim. *Caster Co.* v. *Spiegel*, 133 U. S. 360, 10 Sup. Ct. Rep. 409. In the old and very familiar elevated hopper-mill, the hopper and grinding shell were formed in a single piece, with a flange at the bottom resting upon the top of the box. It must be conceded, too, that all the other elements of the combination were old in coffee and spice mills. Furthermore, Strobridge was not the first to devise a coffee-mill with the hopper suspended within the box. Such mills had already been in public use and upon sale. Strobridge was no more than a mere improver of an old mechanism, and therefore entitled only to his own specific form of device. *Railway Co.* v. *Sayles*, 97 U. S. 554; *Duff* v. *Pump Co.*, 107 U. S. 636, 2 Sup. Ct. Rep. 487.

Once more, the patented improvement does not relate to the operation of the mill. It introduced no new method of grinding, nor did it add to the efficiency of the grinding mechanism previously in use. The improvement, indeed, was merely one in construction. Now, in our judgment, the device embodied in the defendant's coffee-mill for suspending or supporting the hopper within the box is not a mere colorable departure from the form of the Strobridge improvement, but the difference between the two devices is substantial. Our conclusion then is that the charge of infringement is not sustained. Let a decree be drawn dismissing the bill, with costs.