## UNTERMEYER *v.* FREUND *et al.*

*(Circuit Court, S. D. New York. April 18, 1892.)*

1. DESIGN PATENTS—INFRINGEMENT—CONSTITUTIONAL LAW.
    Act Cong. Feb. 4, 1887, creating a liability of $250 against the infringer of a design patent, was a valid exercise of the authority granted by Const. U. S. art. 1, § 1, to secure to inventors for a limited time the exclusive use of their inventions.
2. SAME—CONSTRUCTION OF STATUTE.
    As the act declared that "hereafter, during the term of letters patent for a design, it shall be unlawful," etc., its provisions applied to existing, as well as to future, suits for infringement.
3. SAME—MEASURE OF DAMAGES.
    As the act declares that the infringer shall also be liable for any excess of profits over the $250 arising from the sale "of the article or articles" to which the design has been applied, the courts cannot restrict the recovery merely to the profits arising from the increase of value imparted by the design.

In Equity. Suit by Henry Untermeyer against Max Freund *et al.* for infringement of a patent. Heard on exceptions to the master's report. Overruled.

This action was begun December 30, 1886, for the infringement of letters patent No. 15,121, granted to complainant July 1, 1884, for a design for a watch-case. A decision sustaining the patent was filed January 15, 1889. 37 Fed. Rep. 342. An interlocutory decree adjudging that the complainant recover damages and profits "together with any penalty incurred," and referring it to a master to take the account, was entered January 24, 1889. On the 6th of May, 1891, the master filed his report in which he found nominal damages, and no profits

prior to February 4, 1887,—the date of the act relating to design patents. 24 St. at Large, p. 387. He did find, however, that the complainant was entitled to recover $250 as provided by said act and the profits in excess of $250 since February 4, 1887, on each watch-case to which the design was applied, amounting to $889.02. In brief, the master holds that the act of February, 1887, applies to this cause and under it the complainant is entitled to recover $250 and $889.02. If the act does not apply the complainant, under the rule of the *Carpet Cases,* 114 U. S. 439, 5 Sup. Ct. Rep. 945; 118 U. S. 10, 6 Sup. Ct. Rep. 946, would be entitled to nominal damages only. The defendants filed exceptions to the report, and now urge the following propositions: *First,* that the act of February, 1887, is unconstitutional because it imposes a penalty without due process of law in contravention of article 3, § 2, cl. 3, of the constitution and also of the 5th, 6th, 7th and 8th amendments. *Second,* that the act does not apply for the reason that this suit was commenced one month and five days before the act was approved. *Third,* that congress did not intend to change the rule as laid down in the *Carpet. Cases,* the object of the act being to give the patentee $250 in every case and the profits, in excess of that sum, if he can prove them under the rules established by the supreme court.

*Rowland Cox,* for complainant.

*Frederic H. Betts* and *Samuel R. Betts,* for defendants.

Coxe, District Judge. The act of 1887 is constitutional. Article 1, § 8, of the constitution gives congress the power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The practical result of the decision in *Dobson* v. *Carpet Co.,* 114 U. S. 439, 5 Sup. Ct. Rep. 945, (decided April 20, 1885,) was to deprive the owner of a design patent of all redress against infringers. The attention of congress being called to this condition of affairs the act of 1887 was passed to remedy what seemed to the law-makers a gross injustice. Congress evidently thought that existing law was inadequate to secure to inventors of designs the exclusive right to their discoveries. The $250 which the act permits the owner of the patent to recover is in the nature of a penalty, it is true, but so are the provisions permitting punitive damages in sections 4919 and 4921 of the Revised Statutes. It seems clear that congress had power, under the constitutional provision quoted, to protect a meritorious inventor from the depredations of an intentional infringer even to the extent of designating a fixed sum which, at the expense of perfect accuracy, has frequently been denominated "liquidated damages." In other words, congress had the power to say to the wrong-doer, "You have, with full knowledge of the patentee's rights, appropriated his property and caused him injury; hitherto you have escaped, because he could not show the extent of his loss. This shall not continue; we know he has suffered damage by your act and if you continue to use his property you must pay him at least $250." As the law existed prior to February 4, 1887, the inventor was

remediless. It was the purpose of congress to afford him some relief and nothing short of the provisions of the act in question seemed adequate for this purpose. But even though the court should entertain doubt upon the question of constitutionality it would still be its duty to resolve the doubt in favor of the validity of the law.

In this connection it may not be inappropriate to quote the language used when a similar argument was addressed to this court. In *Sarony* v. *Lithographic Co.*, 17 Fed. Rep. 591, it was said:

"The court should hesitate long and be convinced beyond a reasonable doubt before pronouncing the invalidity of an act of congress. The argument should amount almost to a demonstration. If doubt exists the act should be sustained. The presumption is in favor of its validity. This has long been the rule,—a rule applicable to all tribunals, and particularly to courts sitting at *nisi prius*. Were it otherwise, endless complications would result, and a law which, in one circuit, was declared unconstitutional and void, might. in another, be enforced as valid."

The point that the act of 1887 does not apply, because the action was commenced before the approval of the act, is not well taken. The language of the first section is unmistakable. It says, "that hereafter, during the term of letters patent for a design, it shall be unlawful," etc. There is no exception regarding existing suits. As plainly as language can state it congress has declared that after February 4, 1887, the provisions of the act shall apply to patents for designs. The master has carefully restricted the recovery to infringements occurring after the approval of the act. The defendants have no valid complaint in this regard.

The remaining question relates to the proper construction of the act. It is argued that it was not the intention of congress to give to the owner of a design patent the entire profits made from the manufacture or sale of the article to which the design has been unlawfully applied. That the act says that the owner is entitled to these profits cannot be denied. There is no ambiguity in the language employed, but it is urged that the court is at liberty to place a construction upon the act which will prevent results thought to be unjust and absurd. The act provides:

"And in case the total profit made by him [the infringer] from the manufacture or sale, as aforesaid, of the article or articles to which the design, or colorable imitation thereof, has been applied, exceeds the sum of two hundred and fifty dollars, he shall be further liable for the excess of such profit over and above the said sum of two hundred and fifty dollars."

Nothing can be plainer than this. It is the profit on the sale of the article for which the infringer must account, and not alone the profit which can be demonstrated as due to the design. Having ascertained what the law means the duty of the court seems clear; it must be enforced. Whether the law is wise or unwise is not a question for the court. Arguments of this character should be addressed to the legislative and not to the judicial branch of the government. Discussion might well stop the moment the plain meaning of the law is ascertained.

But if we go a step further and examine the situation at the time the law was passed the conclusion cannot be resisted that the law says precisely what congress intended to say and accomplishes precisely what congress intended to accomplish,—no more and no less.   As has been seen the task to which the law-makers were addressing themselves was to find some remedy for a consummated infringement.   Without legislation the rights of owners of design patents were null.   If the recovery against infringers were confined to profits due to the design the patentee was without redress.   It was to remedy this well-recognized evil that the act was passed.   Is it likely that congress expected to remedy the evil by re-enacting the precise rule of damage which produced the evil?   If it were intended that the profits should be confined to the value imparted by the design no legislation was necessary.   The paragraph above quoted might well have been omitted.   The report of the committee and the debates in congress are all in consonance with this view.   The precise objection now urged was sharply pointed out in congress, and, with full and exact knowledge of the radical change which it would produce, the bill was passed.

Suppositive cases have been suggested for the purpose of showing how the act may produce unjust results requiring the payment of large profits in no way due to the design, but actually due to other and, perhaps, patented features.   On the other hand, the hardship to the patentee of the situation as it existed prior to the act has been enlarged upon.   With full knowledge of the situation *pro* and *con* congress attempted to solve the problem.   The act proceeds upon the idea that a willful infringer is not entitled to the same consideration as a meritorious inventor.   That if one or the other must suffer it shall be he who by his wrongful act has produced the situation in which exact justice is impossible.   By analogy to a well-known principle of equity the theory of the law seems to be that where an infringer intentionally appropriates the design and so mixes up the patentee's profits with his own that it is impossible to apportion them the loss must fall upon the guilty and not upon the innocent party.   The exceptions must be overruled and the report of the master confirmed.   If the foregoing views are correct it follows that the defendants must pay the master's fees.   The master has done his work ably and well and it is hoped that there will be no difficulty in arriving at a satisfactory compensation.   Any difference on the subject may, perhaps, be adjusted by a reference to *Doughty* v. *Manufacturing Co.*, 8 Blatchf. 107.