N. K. FAIRBANK CO. v. WINDSOR et al.

(Circuit Court, W. D. New York.   September 10, 1902.)

No. 95.

1. UNFAIR COMPETITION—PROFITS RECOVERABLE.

Profits recoverable in equity for unfair competition are governed by the same rule as in cases for infringement of trade-marks, and are not limited to such as accrued from sales in which it is shown that the customer was actually deceived, but include all made on the goods sold by defendant in the simulated dress or packages, and in violation of complainant's rights.

2. SAME—ALLOWANCE FOR COST OF MANUFACTURE.

Where an article put up and sold in packages simulating those of complainant was manufactured by defendant in the course of its ordinary business, and so far as appears without increasing the expenses of such business, defendant is not entitled, in an accounting for profits wrongfully obtained from the unfair competition, to an allowance for the estimated cost of manufacture as a separate business.

In Equity.   On exceptions to master's report.

Archibald Cox, for complainant.

Roberts, Becker, Messer & Groat (Tracy C. Becker, of counsel), for defendants.

HAZEL, District Judge.   This is a hearing upon exceptions filed to report of a master appointed by a decree of court to take and state an account of profits diverted from the complainant through wrongful use by defendants of a certain package in imitation of complainant's. The decree declares that the packages of defendants containing soap powder simulated those of complainant, and that the sale thereof constituted an unlawful and inequitable competition in business. The established fraud, therefore, was such as deceived the public and wronged the complainant. The acts of defendants come directly within the scope of Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 77 Fed. 870, and cases there cited.   I have carefully read the report of the master and the exceptions thereto, and have given careful consideration to the argument of counsel in support of said exceptions. No error is apparent which will justify disturbing either the application of the rule by which the master ascertained the profits or any finding of fact or legal conclusion.   I believe it to be established beyond dispute that cases arising out of unfair competition are recognized as analogous to those of violations of trade-marks.   The distinction is clearly defined in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997.   This analogy admits of redress which in its general application in proper case constitutes a ground for relief in equity.   Suits for violations of trade-marks or for unfair competition, when an intent accompanies the act, involve a fraud upon the public and on him whose property right is directly impaired.   In either case redress may be had at law to recover damages or in equity to restrain infringement and to recover the gains and

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

profits which accrued to the wrongdoer by his adoption of a garb for his goods to which another has a prior and better right. In each class of cases the offender seeks to benefit by the reputation of the other, the object being to palm off his goods as the goods of the other. The nature and extent of the injury is substantially the same. The remedy for the enforcement or protection of a trade-mark right or against unfair competition involves the same mode of procedure and ends in the exercise of the restraining power of a court of equity, and the award of such damages as may have been sustained or the profits of the wrongdoer it is presumed would have accrued to the person whose rights were invaded. Judge Wheeler in Milling Co. v. Rowland (C. C.) 27 Fed. 24, succinctly states the rule by which profits are recovered where the goods were sold in infringement of trade-mark rights. He says:

"It is argued that the evidence does not show that the orator would have made this profit if the defendants had not. This might be true, and not affect the rights of the parties. If the defendants made profits by their invasion of the orator's rights, the orator is entitled to them whether the same profits would have been made by the orator or not, and not to any more if they would, for the same profits could not be made by both."

In Lever v. Goodwin (1887) 4 Rep. Pat. Cas. 507, a suit finally decided on the ground of unfair competition, it was contended by defendants, as here, that a complainant must be limited to a recovery of such profits as were actually and fraudulently diverted from him to defendant; that complainant must establish affirmatively a fraudulent sale to each purchaser; or, to state it more comprehensively, that the account should extend only to such profits as arose from the sale of the soap powder which could be shown to have actually deceived a purchaser. That position was not there sustained, nor can it be in the case at bar. It has never been the rule in assessing damages or loss of profits resulting from an unfair use of a trade-name or violation of a trade-mark. In the case last cited it was held, Lord Justice Cotton speaking for the court, that inasmuch as the sale of the goods to the middleman, so dressed as to deceive, was a wrongful act, the defendants must account in the profits which they have made in the sale of the simulated goods. See, also, Edelsten v. Edelsten, 1 De Gex, J. & S. Ch. 185, where it was held that the owner of a trade-mark will not be deprived of his remedy in equity even though it appear from the proofs that all who bought defendants' goods were aware that the goods were not of complainant's manufacture. In Graham v. Plate, 40 Cal. 593, 6 Am. Rep. 639, the court said that the difficulty was in ascertaining what proportion of the profit is due to the trade-mark and what to the extrinsic value of the commodity. As it was difficult of ascertainment, the owner of the trade-mark was awarded the whole profit. It appeared to the court that such a disposition of the profits was justified by reason of the fraudulent acts of the defendant. In Untermeyer v. Freund (C. C.) 50 Fed. 80, it was held that where a patentee's profits are mixed within an infringer's, so as to make it impossible to apportion them, the loss falls upon the guilty and not upon the innocent. The expression of the circuit court of appeals in the decision of the complainant's proceeding against the Bell Com-

pany, 23 C. C. A., at page 563, and 77 Fed., page 878 of the opinion, where a quotation is made from Lever v. Goodwin, supra, seems to indicate the adoption of the rule there stated in assessing lost profits.

The exception based upon the master's failure to allow 72 cents per box for manufacturing expenses is without merit. It appears clearly by the proofs that no one was employed by defendants solely in the production of soap powder. The men were employed to manufacture soap, and incidentally, at the direction of the defendants, put up soap powder in the infringing packages. The packages were then boxed and delivered to a middleman, who supplied the consumer. The manufacture of soap and soap powder was done simultaneously; the same receiving room for stock or raw material was used for handling both commodities; the business was not distinct; the accounts were not separately kept. It does not appear that there was any additional expense by reason of the manufacture and sale of the soap powder other than was allowed by the master. The language employed in the case of Société Anonyme v. Western Distilling Co. (C. C.) 46 Fed. 922, may with propriety be applied:

"When an unlawful business is carried on in connection with the defendant's regular business, and the same agencies are employed in doing that which is lawful and that which is unlawful, no rule of law of which, I am aware requires any deduction for expenses in estimating the profits of the unlawful business. In this case the defendant was a distilling company. It has a place of business, a license for doing business, traveling salesmen, etc. The proof does not convince me that any additional expenses were incurred by the defendant in the manufacture and sale of Benedictine, other than such as the master has allowed. The manufacture of Benedictine was carried on in connection with its ordinary business by the usual number of employés. The unlawful venture increased the gross profits without swelling the gross expenses."

As the testimony of Gunnell, defendant's business manager, satisfies me that the manufacture of the soap powder was carried on without increasing the ordinary expenses of the manufacture of soap other than allowed by the master, no reason appears for disturbing the finding. The only questions which are deemed necessary to consider are those raised by the exceptions to the report of the master. Such exceptions are overruled.

The report of the master is confirmed, with costs.