### WALTER BAKER & CO., Limited, v. SLACK.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

#### No. 955.

1. UNFAIR COMPETITION — DECEPTION OF CUSTOMERS BY RETAIL DEALER— BAKER'S COCOA.

Complainant, Walter Baker & Co., Limited, and its predecessors in business, have since 1780 been engaged in the manufacture of cocoa and chocolate, which have become well known in the trade under the general name of "Baker's Cocoa" and "Baker's Chocolate." In 1897 one W. H. Baker, who had then recently commenced the manufacture of similar products, which were sold in unfair competition with complainant's, was enjoined from using the word "Baker" in connection with his products, except when accompanied with the statement in prominent letters, "W. H. Baker is distinct from the old chocolate manufactory of Walter Baker & Company," and such requirement has since been observed. Defendant, a retail grocer, advertised to sell "Baker's" cocoa and chocolate, and when customers called for either by that name they were given the W. H. Baker product. After suit brought, by his direction such customers were told: "We have two Bakers. Which do you want, W. H. or Walter Baker?" He testified that 9 out of 10 would not know the difference, and would ask for the best, in which case they were given the W. H. Baker product. *Held*, that there was a clear design to deceive customers, the profit being greater on the product sold, and that complainant was entitled to an injunction restraining defendant from advertising any product but complainant's under the name of "Baker," or furnishing it in response to requests for "Baker's" goods, or in any manner using such name in connection with other goods without clearly designating by whom such goods were made.

---

¶ 1. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

2. SAME—DAMAGES.

Where a defendant has deliberately engaged in unfair trade, complain, ant is entitled to recover damages and profits from the time the violation of his rights commenced.

3. SAME—PROFITS—EXPENSES OF SALE.

In determining the profits made by a defendant from the sale of an article in a suit for unfair competition, the expenses of making the sales must be deducted from the gross profits.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

One Dr. James Baker, in the year 1780, established at Dorchester, Mass., a manufactory for chocolate and other products of cocoa. He was succeeded in business by his son, and later by his grandson, Walter Baker. In the year 1836 the latter adopted the name of Walter Baker & Co., and under that name the business was continued by him and his successors until 1895, when they organized a corporation under the laws of the commonwealth of Massachusetts under the name of Walter Baker & Co., Limited, and took over the business. This company was in turn succeeded in March, 1898, by another of the same name, created under a special act of the Legislature of that commonwealth, which latter company, the appellant here, acquired the business, property, and rights of its predecessor, and continued the business, its present factory being situated upon the same site in Dorchester on which the business was founded by Dr. Baker in 1780. The cocoa manufactured by the appellant is put up in half-pound tin cans about 4½ inches high and about 3¼ by 2¼ inches in breadth. Around the tin is a label printed in blue, yellow, and brown. On one side is the picture of a girl carrying a tray, and styled "La Belle Chocolatiere." The conspicuous words on the label are "Walter Baker & Company. Ltd.," printed in blue, and "Breakfast Cocoa," the word "Breakfast" being in yellow and "Cocoa" in white, blue, and brown. On one side the conspicuous words are "Baker's Breakfast Cocoa," the first and last words being in blue and the word "Breakfast" in brown. The chocolate manufactured by appellant is made in half-pound cakes, about six inches in length, three inches in width, and three-quarters of an inch in thickness, with beveled edges, done up in a blue wrapper, with a yellow label pasted upon it on which are the words "Baker's Chocolate," with a description of the goods, and directions for using, in fine print. Upon the reverse side is pasted a picture of the girl above described. These articles have been so made and labeled and placed upon the market for from 30 to 60 years, and are known to the trade as "Baker's Cocoa" or "Baker's Breakfast Cocoa" and "Baker's Chocolate." The name "Baker" has thus become associated in the minds of dealers and consumers, and the public generally, with the product of the appellant's factory, and its products are universally known and bought and sold as "Baker's Cocoa" and "Baker's Chocolate" respectively. During all this time the appellant and its predecessors have extensively advertised their products, and they have become widely known. Until 1893 they were the only manufacturers of cocoa and chocolate by the name "Baker." In the year 1894 one William Henry Baker, of Winchester, Va., began to put upon the market chocolate, powdered cocoa, and other products of the cocoa bean, so put up and labeled as to cause his goods to be called, sold, and accepted as Baker's, and as the goods of the appellant and its predecessors. Thereupon the appellant filed its bill in the United States Circuit Court for the Western District of Virginia against Baker, and also filed a bill against his agent, Sanders, in the United States Circuit Court for the Southern District of New York, to enjoin the palming off of William Henry Baker's goods as the goods of the appellant, and the use of the name "Baker" in connection therewith. In the first suit, in September, 1896, the court by its interlocutory decree enjóined the defendant from imitating the labels, boxes, wrappers, letterheads, or advertisements of the complainant therein, from using the words "& Company" or the word "Company" in connection with the name "W. H. Baker," but declined to enjoin the defendant therein from using the name "W. H. Baker" in connection with the manufacture. Subsequently, on the 20th of July, 1897, the court modified its

decree, so that it enjoined the defendant from using the name "Baker" alone, but required the insertion of the full name "W. H. Baker," and also required to be placed upon each package, in type as prominent as the title, the words, "W. H. Baker is distinct from the old chocolate manufactory of Walter Baker & Company." Walter Baker & Company, Ltd., v. Baker (C. C.) 77 Fed. 181. In the suit in the Southern District of New York a like injunction was granted, and enlarged by the United States Circuit Court of Appeals. Walter Baker & Co. v. Sanders, 80 Fed. 889, 26 C. C. A. 220. The effect of these decisions is to require a differentiation of the packages of the two manufacturers, and to require William Henry Baker to place in prominent type on the face of the packages the announcement that "W. H. Baker is distinct from the old chocolate manufacturer, Walter Baker & Company." Thereafter William Henry Baker, so far as the record discloses, complied with these decrees, continuing the business and using the labels and names as sanctioned by the decrees. His chocolate is put up in half-pound cakes, wrapped in blue, and bearing a lighter blue label, and his cocoa in half-pound and one-fifth pound tins, all displaying prominently the name "W. H. Baker," with the announcement required by the decrees and above stated.

The appellee, Slack, is a retail grocer in Chicago. For a long time he had handled and dealt extensively in the products of the appellant, selling them, and them only, in response to requests for "Baker's Chocolate" and "Baker's Cocoa," and advertising them by those names. In December, 1898, he commenced to deal in the products of William Henry Baker, purchasing chocolate and cocoa in packages labeled as authorized and required by the courts in the suits above stated. Early in the year 1900 he began advertising William Henry Baker's products in the Chicago papers as "Baker's Premium Best Cooking Chocolate" and "Baker's Best Cocoa," and this continued up to the time of the institution of this suit. After July 1, 1900, the appellee advertised "W. H. Baker's Premium Chocolate," but the advertisement contained no information discriminating between the two kinds. There is evidence to show that his customers asking for "Baker's Cocoa" or "Baker's Chocolate" were supplied with articles of William Henry Baker's manufacture, the profit on which was a few cents a pound more than on the sale of the product of the appellant; but in case Walter Baker's chocolate or cocoa was asked for, customers received that; and that after this suit his salesmen were instructed to say that the chocolate of W. H. Baker was not made by Walter Baker & Co., and that, when "Baker's Chocolate" and "Baker's Cocoa" was asked for, the salesmen would ask what brand, saying, "We have two Bakers. Which do you want, W. H. or Walter Baker?" But 9 out of 10 would not know the difference, saying, "Which is best? Give me the best." And the salesmen would then give them W. H. Baker's.

This bill was filed July 23, 1900, to enjoin the alleged unfair trade. The prayer of the bill as amended was for a decree as follows: "That a writ of injunction, temporary until hearing and perpetual thereafter, may issue out of and under the seal of this court against the said Charles H. Slack, restraining him, his agents and employés, from advertising, selling, or causing to be sold any cocoa or chocolate other than that made by your orator as or under the names 'Baker's Cocoa' or 'Baker's Chocolate,' or in response to requests for 'Baker's Cocoa' or 'Baker's Chocolate;' and also from using the word 'Baker,' 'Bakers,' or 'Baker's' alone on packages, boxes, labels, show cards, or in advertisements, or orally, or in any manner in connection with powdered cocoa or chocolate other than that made by your orator; and from using as aforesaid the word 'Baker,' 'Bakers,' or 'Baker's' (whether the same be or be not coupled with other names or initials) in such a collocation with the words 'cocoa' or 'chocolate' (whether the same be or be not coupled with some further descriptive word or words) as to indicate that such cocoa or chocolate is a variety of 'Baker's Cocoa' or 'Baker's Chocolate,' but the defendant may indicate thereon in appropriate language by or for whom the cocoa or chocolate in question is made or prepared; and nothing herein shall prohibit defendant from selling the cocoa and chocolate of William Henry Baker, of Winchester, Va., wrapped and labeled in the manner prescribed by the United States Circuit Court for the Western District of Virginia in the suit referred to in the bill of complaint."

On April 3, 1901, the court entered an interlocutory decree enjoining the defendant as follows: "That the defendant, Charles H. Slack, his agents, servants, and employés, be, and they hereby are, perpetually enjoined from selling, or causing to be sold, any cocoa or chocolate other than that made by Walter Baker & Co., Limited, in response to requests for 'Baker's Cocoa' or 'Baker's Chocolate,' unless prior to such sale the purchaser is actually notified that the cocoa or chocolate about to be furnished is not manufactured by the old chocolate manufactory of Walter Baker & Co., and that a writ of injunction issue to that effect;" but refused to enter any decree with respect to the advertising by the defendant. The complainant below excepted to the action of the court in refusing to award a perpetual injunction in accordance with the prayer of the amended bill. The matter was referred by the decree to a master to ascertain the profits which the defendant had made since May 1, 1900, and, to the action of the court in limiting the accounting to a period since that date, the complainant below also excepted. The master reported the gross profits to be $128.48, and deducted therefrom the average cost of operating the general business of the defendant, 24.27 per cent. of the gross sales, being $113.11, leaving as a net profit to the defendant on the sale of the infringing goods $15.37. Upon that report the final decree was entered on the 13th day of June, 1902, enjoining the defendant as in the interlocutory decree stated, overruling the exceptions to the master's report, confirming the same, and awarding judgment for $15.33 profits and for the costs of the action, from which decree, upon due assignment of errors, this appeal is taken.

Frank F. Reed and W. L. Putnam, for appellant.
A. B. Melville, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The appellee sold the product of William Henry Baker in the exact form of package and style of label sanctioned by the decrees of the courts referred to in the statement of facts. He had purchased from William Henry Baker the product in the form and style which those courts had authorized Baker to make and sell. To that extent the appellee, we are disposed to hold, was justified. It must not, however, be overlooked that the word "Baker," as applied to chocolate and cocoa manufactured by the appellant, had in the course of years come to represent to purchasers the product of Walter Baker & Co., and was so generally known to the trade. The appellee had largely dealt in those products, and was well informed of those facts, prior to the time when he undertook the sale of the product of William Henry Baker's manufacture. It must also not be overlooked that William Henry Baker instituted his business and applied the name of "Baker" to his products fraudulently, with the expectation of profiting by the trade-name of "Baker," and in the hope of diverting to himself some part of the trade which legitimately belonged to Walter Baker & Co., Limited. We must therefore deal with the conduct of the appellee in the marketing of this product of William Henry Baker in the light of these circumstances. He had the right, as we assume, to sell that product, but honesty and good faith required that he should not palm it off as the product of Walter Baker & Co.; that he should not represent it as "Baker's Chocolate" or "Baker's Cocoa," for that meant to the purchaser that it was the product of Walter Baker & Co., Limited. We need not be diligent to assemble the many instances

which the record discloses of wrongful imposition upon purchasers of the one product for the other, since the appellee himself furnishes the key to his conduct. It is satisfactorily shown that for a long time prior to this suit purchasers inquiring for "Baker's Chocolate" would be supplied with W. H. Baker's product, and this because "we made a little more on that." Upon the commencement or threatening of the present suit, he instructed his salesmen to say to purchasers demanding "Baker's Cocoa" or "Baker's Chocolate," "We have two Bakers. Which do you want, W. H. or Walter Baker?" He also said that 9 out of 10 purchasers would not know the difference, saying, "Which is best? Give me the best." And the salesman would then furnish the W. H. Baker product. Without enlarging upon this conduct, we think it evidences a deliberate design and intention to deceive. The purchaser was entitled to that which he demanded, to that which had been approved to his taste by experience, or which he had been recommended to purchase. In the market there were no "two Bakers'" products. There was but one, and that was the product of Walter Baker & Co., Limited. The courts had enjoined William Henry Baker from using the word "Baker" alone, and had required to be prominently placed upon each package the statement that "W. H. Baker is distinct from the old chocolate manufactory of Walter Baker & Company." No such statement or representation was by the appellee directed to be made to the inquirer for "Baker's Chocolate" or "Baker's Cocoa." Instead, there is manifested a clear design to mislead and confuse the proposing purchaser with the statement that there were two "Baker" products in the market. The courts sanctioned the use by William Henry Baker of his name "Baker" upon the packages, with the explanation stated, to avoid, as far as possible, confusion of goods; but they did not sanction the use of the name "Baker" in connection with the term "chocolate" or "cocoa." We have no difficulty, therefore, in finding that the appellee, with full knowledge of the situation, sought to palm off the spurious goods as the genuine. The court below was evidently of that opinion, but by its decree enjoined the appellee from selling "any cocoa or chocolate other than that made by Walter Baker & Co., Limited, in response to requests for 'Baker's Cocoa' or 'Baker's Chocolate,' unless prior to such sale the purchaser is actually notified that the cocoa or chocolate about to be furnished is not manufactured by the old chocolate manufacturer, Walter Baker & Co." This, as we conceive, gave the appellee leave to sell the spurious article as "Baker's Cocoa" or "Baker's Chocolate," if it was accompanied by the statement that it was not manufactured by the old chocolate manufacturer, Walter Baker & Co. We may safely take it for granted that not one in a thousand knowing of or desiring to purchase "Baker's Cocoa" or "Baker's Chocolate" know of Walter Baker & Co., Limited. The name "Baker" is identified with the product, and known, in connection with the product of the appellant, as a badge and guaranty of excellence. To sanction the sale of the spurious article as "Baker's Chocolate" or "Baker's Cocoa," even if accompanied with the statement that it was manufactured

by William Henry Baker and not by the old manufacturer, Walter Baker & Co., Limited, would not inform the purchaser that it was a different article, or other than the article known to the trade and to the world as "Baker's Chocolate" and "Baker's Cocoa," and the identity of the name is the more subtle in the deception. The purchaser was entitled to that for which he had asked. We do not mean to say that it is not within the province of the seller to represent to the proposing purchaser that another article which he has is superior in excellence to that which is called for, and to induce him by proper argument or statement to purchase that other, but he must not represent such other to be the product which the purchaser had called for. In this respect we think the decree below failed to give adequate relief, and that the prayer in the amended bill in this respect correctly states the relief to which the appellant is entitled, and safeguards the right of the appellee to sell William Henry Baker's products in a proper manner.

Prior to this suit the appellee advertised the product of William Henry Baker as "Baker's Chocolate" and "Baker's Cocoa." This was done because the name "W. H. Baker" was a new name, and the advertisement in the original name would draw the custom of persons acquainted with the product of the appellant. This was seeking to use the reputation and the good will of the appellant in the sale of the spurious product, and was an efficient means to that end. This was as much a fraud as an actual oral representation to a proposing purchaser, and should have been enjoined. Singer v. Wilson, L. R. App. Cases, 389; Jay v. Adler, 6 R. P. C., 136, 139; Mitchell v. Williams, 106 Fed. 168, 45 C. C. A. 265.

The remaining questions arise upon the directions of the decree with respect to an accounting, and the report of the master thereon, confirmed by the court.

First. The court adjudged that the complainant should recover of the defendant profits which the defendant had made, and the damages which the complainant had suffered, through the defendant's violation of complainant's right, as decreed, since May 1, 1900. The complainant below excepted to so much of that decree as limited the accounting of profits and damages by that date. This date was an arbitrary date, and no reason is suggested in the record for its selection. The evidence discloses that from December, 1898, there had been repeated infringements of the complainant's right, and, necessarily, resulting damage. The complainant was entitled to full compensation for the injury sustained. We perceive no reason why it should be debarred of recovery for the time prior to May 1, 1900. In that respect the decree was faulty.

Second. The proofs adduced to the master had reference only to the profits accruing to the defendant from the illegal sale. The question of the true measure of damages in cases of this sort is an interesting one. The injured party is entitled to full compensation for the injury, but how shall that be measured? Manifestly, the profits which the infringer has made would not in all cases be compensation to the injured. The latter's loss in part inheres in the failure to acquire a just and deserved gain; also in the injury to

the reputation of his product by reason of the substitution of the spurious article. The latter element is difficult, if not impossible, of accurate admeasurement. It can only be approximately compensated by an allowance in the nature of punitory damages, resting largely in discretion. But as to the actual loss, is it not more reasonable to say that the loss sustained is the profit which the injured party would have made if the genuine goods had been supplied, and not the profit which the party inflicting the injury actually made by the unlawful sale? That is to say, ought not the injured party to recover the difference between the cost to him of the manufacture of his article and the price at which he is able to dispose of it in the market, together with such sum as the court in its discretion should think the genuine article had lost in its reputation by substitution of the spurious article? Should not regard be had to complainant's loss, rather than to defendant's profits? Hall v. Stern (C. C.) 20 Fed. 788. It has been supposed that the measure of damages in these cases is analogous to the measure of damages allowed for infringement of a patent, but Judge Sawyer suggests that the analogy will not hold. Benkert v. Feder (C. C.) 34 Fed. 534. We are, however, spared the necessity of resolving this interesting question, since the complainant below failed to take any exception to the decree in this regard, and contented himself before the master with proving the profits which the infringer had made; and the only question presented for decision is whether the master, whose report was confirmed by the court below, was right in deducting from the gross profits made by the defendant by the sale of the spurious goods a proportionate percentage for the expense of operating the general business of the defendant. In The Tremolo Patent, 23 Wall. 518, 23 L. Ed. 97, decided in 1874, the court held, with respect to an infringement of the patent right, that, in the ascertainment of profits made from sales of an organ with a patented attachment, it was proper to prove the general expenses of the business in effecting sales of organs generally, and to deduct a ratable proportion from the profits made from the patented attachment. In Société Anonyme v. Western Distilling Co. (decided in 1891 [C. C.]) 46 Fed. 921, Judge Thayer, delivering an oral opinion, stated that the expenses of business to be allowed must be expenses necessarily incurred in the unlawful venture, which would not have been incurred but for engaging in such venture. He says that "when an unlawful business is carried on in connection with the defendant's regular business, and the same agencies are employed in doing that which is lawful and that which is unlawful, no rule of law of which I am aware requires any deduction for expenses in estimating the profits of the unlawful business." He makes no reference to the decision in the Tremolo Patent, although in that case there was, as in the case before Judge Thayer, a like invasion of a right. See, also, N. K. Fairbank Co. v. Windsor (C. C.) 118 Fed. 96. Considering that the action for damages for the invasion of such right sounds in tort and not in contract, there is much force in Judge Thayer's reasoning. It does not seem quite just that the wrongdoer should be permitted to escape without pecuniary loss to himself, and yet

we must remember that here the appellant has chosen to prove, as the basis of recovery, merely the profits which the wrongdoer has made, and in estimating those profits we feel concluded by the ruling of the ultimate tribunal, that, to ascertain the net profits accruing to the wrongdoer, as in ascertaining profits in any other case, the expense of making the sale should be deducted from the gross proceeds of the sale, upon the same principle that the cost of the spurious article is deducted from the gross receipts of its sale.

The failure to receive adequate compensation for the injury done in such case proceeds from the act of the party in seeking recovery for the profits made by the wrongdoer, rather than the loss sustained by the injured party.

The decree will be reversed, and the case remanded with a direction to the court below to render an interlocutory decree pursuant to the prayer of the amended bill, and to ascertain, according to law, the loss, injury, and damage sustained by the complainant, and to decree accordingly.