## DAVID E. FOUTZ CO. v. S. A. FOUTZ STOCK FOOD CO.

(Circuit Court, D. Maryland. July 2, 1908.)

TRADE-MARKS AND TRADE-NAMES — UNLAWFUL COMPETITION — USE OF PROPER NAMES.

In 1867 David E. Foutz and Solomon A. Foutz, partners, under the name S. A. Foutz & Bro., began to manufacture certain animal remedies which became widely and favorably known and advertised. Solomon A. Foutz sold out to his brother, who greatly extended the business, which on his death was conducted by his widow, who thereafter formed plaintiff corporation, to which the business formulas, trade-marks, etc., were transferred, and plaintiff on January 28, 1908, registered the word "Foutz's" in the Patent Office as its trade-mark. Stanley A. Foutz, son of Solomon, an attorney, organized defendant corporation under the name S. A. Foutz Stock Food Company, and commenced to sell other animal remedies intended for the same purpose as those prepared by complainant under names embracing the name "Foutz's," and cautioned purchasers to look for the name "S. A. Foutz" and the pansy trade-mark to get the genuine. *Held*, that defendant's act constituted unlawful competition, and that its corporate name should be amended to include the full name "Stanley A. Foutz," and that

the word "Foutz" on defendant's packages, circulars, advertisements, and literature should only be used in connection with a statement that the material was prepared from the formulas of "Stanley A. Foutz," and that the goods were not prepared by complainant successor to the original Foutz Company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 84.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.

Crain & Hershey and Elmer J. Cook, for complainant.
W. Harry Holmes, for defendant.

MORRIS, District Judge. This is a case of alleged unfair competition in business. Both corporations have their principal places of business in Baltimore, Md., and were organized by persons connected with the Foutz family, resident in Maryland.

The bill alleges: That about 50 years ago two brothers, David E. Foutz and Solomon A. Foutz, partners trading as S. A. Foutz & Bro., manufactured and extensively sold certain remedies known as "Foutz's Horse and Cattle Powders" and "Foutz Liniment," which became well-known articles of commerce. In 1867, about 40 years ago, Solomon A. Foutz sold out, for a considerable sum of money, his interest in the business to his brother and partner, David E. Foutz, and David E. Foutz became the sole owner of all the secret formulas, names, good will, stock of goods, and materials connected with the business of manufacturing and selling the Foutz cattle medicines and remedies, and he continued the business under the name of S. A. Foutz & Bro. until his death, in 1877. Under the sole proprietorship of David E. Foutz, the business was greatly extended, and large sums were spent in advertising; the said David E. Foutz having spent in 1871 and 1872 as much as $55,000 in advertising in those two years. The bill alleges that the cattle remedies became extensively known as the Foutz remedies, and particularly certain remedies designated as "Foutz's Celebrated Horse and Cattle Powders," "Foutz's Superior Poultry Food," "Foutz's Certain Worm Powder," "Foutz's Certain Colic Cure," "Foutz's Healing Powder," and "Foutz's Liniment," and the name "Foutz's" became widely known as distinguishing the preparations and remedies manufactured by the said S. A. Foutz & Bro., and the said word "Foutz" has acquired a secondary meaning indicating the medicines and remedies prepared by the said David E. Foutz, trading as S. A. Foutz & Bro., and by the complainant as his successor, which preparations are generally known to the trade and to users, and distinguished from all other preparations, by the use in connection therewith of the word "Foutz's." That the said David E. Foutz, trading as S. A. Foutz & Bro., continued the said business as the sole proprietor of said preparations, formulas, and trade-marks, widely extending the said business, until his death, in 1877, and thereafter said business was continued by his widow as the sole proprietor under the same name until 1903, when she caused the plaintiff corporation, the David E. Foutz Company, to be formed, which took over and became proprietor of the business,

including the formulas, names, good will, stock, and materials, and continued to use the word "Foutz's" as a trade-name for the various preparations before mentioned. On January 28, 1908, the plaintiff caused to be registered in the United States Patent Office the word "Foutz's" as its trade-mark for remedies for the ailments and diseases of horses, cattle, and other stock, alleging that it had been continuously in such use by the complainant and its predecessors in business since 1858.

The bill then alleges: That Stanley A. Foutz, a son of the Solomon A. Foutz, who, as before recited, about the year 1867 sold out his interest in the business to his brother, David E. Foutz, with the design and intention of acquiring the profits to be gained by selling the Foutz remedies—resulting from their long established reputation—and of substituting for the said remedies other articles of its own make, organized and incorporated in November, 1904, the S. A. Foutz Stock Food Company, the defendant, and went among the trade and customers of the complainant, and by means of many and different false and fraudulent misrepresentations has been selling to the old customers of complainant the preparations of the S. A. Foutz Stock Food Company as the same goods that said customers had been for many years obtaining from the complainant and its predecessors. That the said S. A. Foutz Company of Baltimore City advertised its preparations as "S. A. Foutz's Condition Powders," "S. A. Foutz's Poultry Food," "S. A. Foutz's Stock Food," "S. A. Foutz's Liniment," "S. A. Foutz's Healing Powder," "S. A. Foutz's Colic Tablets," and other similar preparations. That for the past 30 or 40 years the complainant's preparations—"Foutz's Horse and Cattle Powders"—have been known to the trade interchangeably as "Foutz's Condition Powders" and "Foutz's Powders," and have been listed on the drug catalogues and jobbers' price lists throughout this country and foreign countries as "Foutz's Condition Powders," and the complainant has received many orders from customers calling for "Foutz's Condition Powders" or "Foutz's Powders," meaning "Foutz's Celebrated Horse and Cattle Powders," and the complainant alleged that the name "S. A. Foutz's Condition Powders" was adopted by the defendant and its predecessor to more readily deceive the public and enable the defendant and its predecessor to acquire the trade and business of the complainant by unfair and fraudulent competition.

The bill recites that the S. A. Foutz Stock & Food Company of Baltimore City, incorporated in 1904, became insolvent in 1906, and all its assets were sold, and Stanley A. Foutz became the purchaser and thereupon caused to be incorporated the S. A. Foutz Stock Food Company, under the laws of the territory of Oklahoma, and transferred to it the said assets, and that said S. A. Foutz Stock Food Company of Oklahoma still continues to commit the before-mentioned frauds upon the public, and by its agents and salesmen are making false statements with regard to the business of both complainant and defendant, and is greatly and irreparably injuring the complainant's business and is fraudulently selling its goods as the goods made by the complainant, and depreciating the good name and reputation of the complainant's goods.

The defendant by its answer, by way of defense, asserts: That the only similarity in the goods of the parties to the suit is the word "Foutz's," and that is the proper name of the organizer, president and largest stockholder of the defendant corporation, whose name is Stanley A. Foutz; that in the manufacture of its goods the defendant uses formulas made by said Stanley A. Foutz; that it has adopted for its trade-mark a pansy conspicuously displayed on all its circulars and wrappers; that the name "S. A. Foutz's" is printed in large, bold type on said wrappers with the words "manufactured only by S. A. Foutz Stock Food Company, Baltimore, Md."; and that there is no similarity in color, shape, or size between the packages of its goods and those of the complainant.

The facts appear to be as stated in the bill of complaint and in the answer. The business of preparing and selling the Foutz cattle remedies having been established for so many years, and the preparations having come to be widely known as Foutz's medicines and preparations, and the complainant having become the sole and exclusive owner of the long-established business, with its formulas, trade-names, and good will, it is obvious that no one can carry on the same business, in the same territory, using the name "Foutz," without manifest injury to the complainant. It is also quite obvious that Stanley A. Foutz, whose father had sold his share in the business to the complainant's predecessor, and who is himself a lawyer and not a manufacturer of horse and cattle medicines, went into the rival and competing business for the reason that the use of the family name "Foutz" would at once give to this business venture the advantage of the established reputation that the Foutz remedies had acquired by years of use and advertising. The defendant puts on his circulars this caution:

"Always look for the name S. A. Foutz and the pansy trade-mark and you will get the genuine. Accept no other. Manufactured only by S. A. Foutz Stock Food Co., Old York Road, Baltimore, Md."

This caution would naturally import that the S. A. Foutz preparations were the genuine; that is to say, the preparations known as the "Foutz" remedies.

In Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, the matter of the use of a proper name is very fully discussed and the law settled. The complainant in that case had acquired the good will, trade-names, and the business of manufacturing safes established by Joseph L. Hall, under whose proprietorship the safes made by him had acquired great repute and were known and designated as "Hall's Safes," and to this good will the complainant company had succeeded. Discussing the use of the name "Hall" by a rival company, the court said (page 559 of 208 U. S. and page 351 of 28 Sup. Ct. [52 L. Ed. 616]):

"Some of the Halls might have left it and set up for themselves. They might have competed with it. They might have called attention to the fact that they were the sons of the man who started the business. They might have claimed their due share, if any, of the merit in making 'Hall's' safes what they were. White v. Trowbridge, 216 Pa. 11, 18, 22, 64 Atl. 862. But they would have been at the disadvantage that some names and phrases, otherwise truthful and natural to use, would convey to the public the notion that they were continuing the business done by the company, or that they were in some

privity with the established manufacture of safes which the public already knew and liked. To convey that notion would be a fraud, and would have to be stopped. Therefore such names and phrases could be used only if so explained that they would not deceive. The principle of the duty to explain is recognized in Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972. It is not confined to words that can be made a trade-mark in a full sense. The name of a person or a town may have become so associated with a particular product that the mere attaching of that name, without more, would have all the effect of a falsehood. Walter Baker & Co. v. Slack, 130 Fed. 514, (65 C. C. A. 138). An absolute prohibition against using the name would carry trade-marks too far. Therefore the rights of the parties have been reconciled by allowing the use, provided that an explanation is attached. Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 200, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118; Brinsmead v. Brinsmead, 13 Times L. R. 3; Reddaway v. Banham (1896) A. C. 199, 210, 222; American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 87, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263; Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 Pac. 879. Of course, the explanation must accompany the use, so as to give the antidote with the bane. * * * The name of the defendant company of itself would deceive unless explained. * * * We are not disposed to make a decree against the Halls personally. That against the company should be more specific. It should forbid the use of the name Hall, either alone or in combination, in corporate name, on safes, or in advertisements, unless accompanied by information that the defendant is not the original Hall's Safe & Lock Company or its successor, or, as the case may be, that the article is not the product of the last-named company or its successors. With such explanations the defendants may use Hall's name, and if it likes may show that they are sons of the first Hall and brought up in their business by him, and otherwise may state the facts."

In Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, it was said:

"Where the name is one which has previously thereto come to indicate the source of manufacture of particular devices, the use of that name by another unaccompanied with any precaution or indication in itself amounts to an artifice calculated to produce deception."

What would be a reasonable and practical differentiation to be observed by the defendant to prevent unlawful confusion and unfair competition? In the first place, it would seem that the defendant's name should be as different as the facts allow. This can be done by amending the corporate name so as to read the Stanley A. Foutz Stock Food Company. The date of the incorporation and the name of the state or territory granting the same should be given. On the packages, circulars, advertisements, and literature made use of by the defendant, it should be stated that the formulas used are those prepared by Stanley A. Foutz, and the goods are not the remedies prepared by the David E. Foutz Company, successor to S. A. Foutz & Co., originally established in Baltimore about the year 1858.

The use of the present name of the defendant corporation should be enjoined, and the defendant, its officers, agents, salesmen, employés, and servants, should be enjoined and restrained from representing the defendant's goods as being of the manufacture of the old firm or its successors, and from representing the same as that which the old customers of the complainant and its predecessors have been accustomed to purchase.