## HENNESSY et al. v. WILMERDING–LOEWE CO.

(Circuit Court, N. D. California. June 19, 1900.)

### No. 12,588.

1. TRADE-MARKS—SUITS FOR INFRINGEMENT—DAMAGES RECOVERABLE.
   The amount recoverable by the owner of a trade-mark from a willful infringer is not limited to the profits made by the defendant, but includes also the damages resulting to the complainant from the injury to his business or the reputation of his goods.

2. SAME—EXEMPLARY DAMAGES.
   Exemplary damages cannot be awarded by a master on an accounting directed in a suit in equity for infringement of a trade-mark.

3. SAME—COSTS.
   A decree for the complainant in a contested suit for infringement of a trade-mark carries all costs, in accordance with the usual rule in equity, unless under exceptional circumstances.

In Equity. Suit for infringement of trade-mark. On exceptions to master's report on accounting.

Adolph L. Pincoffs and James L. Hopkins, for complainants.
Naphtaly, Friedenrich & Ackerman, for respondent.

MORROW, Circuit Judge. The complainants in this case are citizens of France, and the respondent a corporation organized under the

laws of this state, having its principal place of business at San Francisco, Cal. Complainants are the manufacturers of a liquor known as the "Hennessy Brandy," and in the bill of complaint allege that respondent has offered for sale and sold a concoction or compound in imitation of complainants' brandy, under the name of "Hennessy Brandy," and has used fac similes of complainants' trade-names, devices, and labels, and, with intent to defraud and deceive the public, has caused its compound to be put up in cases like complainants', and in bottles precisely like those of complainants. The bill further alleges that such imitation is calculated to deceive and has deceived many persons, and misled consumers of complainants' brandy, to the damage of complainants; that the article put up and sold by respondent is inferior in quality to that of complainants, and that the reputation of complainants' brandy is injured by the acts of respondent, and complainants suffer damage thereby. The bill prays that it may be decreed that respondent account for and pay over the income or profits derived from the violation of complainants' rights, together with the damages sustained by complainants, and that a writ of injunction issue, perpetually restraining respondent from a repetition of the acts complained of. The answer of the respondent specifically denies the material allegations of the bill, and, by way of special reply to the bill, alleges that in 1894 one J. C. Wilmerding was engaged in business as a liquor merchant in the city and county of San Francisco, under the firm name of Wilmerding & Co., and upon his decease his executors sold the entire stock of merchandise on the premises formerly occupied by him to the firm of Loewe Bros., and among this stock was a quantity of Hennessy brandy; that the corporation respondent and none of its officers was aware that this was not the genuine brandy manufactured by complainants until about two weeks prior to the filing of the complaint herein, and that this brandy included not more than 24 bottles of spurious brandy, falsely called "Hennessy Brandy"; that James L. Hopkins, one of complainants' solicitors, shortly before the filing of the bill of complaint called at respondent's place of business and desired to purchase a few bottles of Hennessy brandy; that Joseph M. Loewe, a member of the corporation respondent, was about to sell him one of the spurious bottles, but, on being informed by an employé that it was not genuine Hennessy brandy, refused to sell it; that thereafter some person, on behalf of the said Hopkins, called at the respondent's store, and, having asked for Hennessy brandy, was served with the imitation Hennessy brandy by one of respondent's employés, who was ignorant of its spurious character, and therefore sold it to the said person; that such sales did not exceed two dozen bottles, and that no other Hennessy brandy has ever been kept or offered for sale by the respondent; that, when respondent was notified by said Hopkins that the brandy purchased was not genuine, it offered to exhibit its books and accounts for the purpose of showing said Hopkins that it never at any time had more than two dozen bottles of said brandy, and, having explained the means by which this spurious brandy came into its possession, offered to compensate complainants to the extent of the damage suffered by

the said sale; that complainants thereupon demanded so exorbitant a sum that respondent refused to pay it. An interlocutory decree has been entered perpetually enjoining respondent from handling, offering for sale, or selling any liquor falsely purporting to be brandy or cognac bottled by complainants, or any liquor not bottled by complainants and bearing complainants' label, or a colorable imitation of it. Reference has also been ordered to the master in chancery to take, state, and report an account of the profits and damages herein. The master, in his report upon the accounting, finds from the testimony that "the sales made by defendant of imitation Hennessy brandy were made with full knowledge of the fact that the brandy so sold was counterfeit, and with the intention to derive an unjust profit therefrom, and in wanton disregard of complainants' rights." He awards complainants $50 as damages for the infringement of their trade-mark, and the injury to the reputation of their brandy resulting from respondent's wrongful acts, and finds the profits on the sales of imitation Hennessy brandy to be $28.60. The master recommends, therefore, that a judgment be entered for complainants and against respondent in the sum of $78.60. In the briefs filed by complainants' counsel upon accounting before the master, it was contended that the complainants were entitled to punitive damages in addition to an award of damages for the injury to the reputation of their brandy by respondent's acts, for the purpose of deterring others from the same fraudulent acts. The master has decided against this contention, declaring that he is limited on accounting to an assessment of the actual damages suffered by complainants, and that he is not empowered to award punitive damages against the respondent. The report of the master upon the accounting having been filed, the complainants have excepted thereto. The grounds of complainants' exception are stated to be that the master has erred in his findings, that he is limited upon accounting to the assessment of the actual damages claimed by complainants, and that he may not award punitive damages. Complainants ask that the report of the master be vacated, and that he be directed to assess such punitive or exemplary damages as the facts warrant. Respondent has also filed an exception to the report of the master, and particularly to that part of it which decides that the sales of counterfeit Hennessy brandy were made in wanton disregard of complainants' rights. Respondent maintains that this decision is not sustained by the evidence, which it contends shows that respondents never acquired or owned any brandy in imitation of complainants' brandy, except the two cases purchased from the estate of J. C. Wilmerding, deceased, as admitted in the answer; that respondent sold only 18 bottles of this imitation brandy, and those because respondent and its employé who made the sale were in ignorance of the fact that they were counterfeit; and that no sale had been made in wanton disregard of complainants' rights. Respondent further excepts in regard to the part which awards to complainant $50 damages for injury to the reputation of complainants' brandy, and says that the master has committed error in awarding any damages in addition to the profits realized on the 18 bottles of imitation brandy. Re-

spondent asks that complainants have judgment for no greater sum than $28.60, and that the costs of the accounting be taxed against complainants.

The testimony on file does not support the first of respondent's objections. The report of the master is most comprehensive upon this point, and contains a very full analysis of the testimony upon which his conclusions are based. Respondent insists that the sales of imitation brandy were made by an employé in ignorance of the fact that the brandy was spurious. This employé, Rosenberg, testified that he has been a secretary of the respondent corporation since its incorporation in 1895, that he has had the supervision of buying the case goods of the establishment, and that he had for 13½ years prior to the incorporation of the respondent been bookkeeper of the firm of Loewe Bros., of which Joseph M. Loewe, manager of the respondent corporation, had been a member from 1889 up to the time of the incorporation of the respondent. The spurious liquor was distinguished by the word "Lyons" marked in the inventory against the two cases of the imitation brandy. Under these circumstances, it is impossible to arrive at any other conclusion than that of the master,—that this employé had full knowledge of the two cases of imitation Hennessy brandy at the time he made the sale to the agent of Hopkins. He sold the spurious liquor to this agent upon three several occasions, and on each of these occasions as genuine Hennessy brandy. It appears also from the testimony that the entries in the inventories of the goods purchased from the Wilmerding Company relating to the counterfeit brandy are in the handwriting of Joseph M. Loewe, the manager of the respondent corporation, which inventory was taken some four years before this suit was brought, and in spite of which the answer of the respondent corporation, sworn to by Loewe, states:

"That among the merchandise so purchased was a quantity of Hennessy brandy; that this defendant did not, nor did any of its officers, learn or know that any portion of said brandy was not the genuine brandy of complainants until about two weeks before the filing of the bill of complaint herein."

This testimony does not tend to establish the bona fides of respondent, nor to support its contention that it is the victim of a mistake arising from the ignorance of its salesman. On the contrary, the facts of the case, as they appear in the testimony, entirely sustain the findings of the master.

With regard to that part of the master's report which awards complainants $50 damages for injury to the reputation of their brandy, respondent objects, and contends that the master is not authorized by law to impose damages exceeding the profits realized on the 18 bottles of spurious brandy. The interlocutory decree herein orders a reference to the master "to take, state, and report an account of profits and damages herein." According to respondent's contention, the duty of the master extends to an accounting of the profits only. In the case of Vulcanite Co. v. Van Antwerp, 9 O. G. 497, Fed. Cas. No. 5,600, it was decided that the terms "profits" and "damages," as used in the patent act, are not convertible. The United States circuit court for the district of New Jersey, in deciding that case, said:

" 'Profits' doubtless refer to what the defendant has gained by the unlawful use of the patented invention, and 'damages' to what the complainant has lost."

The master cites various authorities in support of his report, which tend to show the same distinction in trade-mark cases between "profits" and "damages" as is expressed in the patent case just cited. In Manufacturing Co. v. Gato, 25 Fla. 886, 7 South. 23, the court said:

"A party whose trade-mark has been violated is entitled to recover all profits realized by the wrongdoer from sales of the spurious article, and also damages resulting from such violation."

In Sawyer v. Kellogg (C. C.) 9 Fed. 601, it is said:

"We have no doubt about the propriety of a reference, or of the liability of the defendant. If it can be shown on the accounting that profits were made by his work and labor, or that damages resulted to the complainant therefrom, * * * and if the defendant has damaged the complainant by the unlawful use of the trade-mark, the nature and extent of the damage is a proper subject of inquiry."

In Benkert v. Feder (C. C.) 34 Fed. 534, Judge Sawyer said:

"The trade-mark sells the whole article, however inferior or injurious in that particular, and prevents the sale of the owner's goods of equal amount. At least, that is the plausible purpose and the natural tendency, whether always accomplished or not; and the injured party should have at least the whole profit resulting from the wrongful act, and such I understand and hold the rule to be. The damages may be much more, arising from destroying the reputation of the owner's goods."

See, also, Graham v. Plate, 40 Cal. 593.

In Brown, Trade-Marks (2d Ed.) p. 503, it is said:

"Compensatory damages should be given. The proper measure of damages in case of violation of a trade-mark is generally the profits realized upon the sales of the goods to which the spurious marks are attached. * * * The actual damages would seem, as a general rule, to be all that could be reasonably claimed. There may be exceptions. Cases may arise where the circumstances are aggravated, and such as to repel altogether the bona fides of the infringement. Each case must necessarily depend upon its own circumstances."

The case at bar appears to come within the scope of the law as stated in the extract just cited. Where the circumstances are aggravated, complainants are entitled to damages for injury to the reputation of their goods. This is such a case. Full compensation requires that not only should an account be taken of the profits, but that the damage inflicted upon the reputation of complainants' goods by the sale of respondent's compound under an imitation of complainants' trade-mark should be assessed by the master. This assessment the master has made, and fixed the damages at the sum of $50, which this court considers to be a reasonable amount, in view of the circumstances, and for which the master has given sufficient reasons.

Complainants, in addition to compensatory damages, demand punitive or exemplary damages, and the master has decided that he is not empowered to grant these. The American and English Encyclopædia of Law, under the title "Trade-Mark," in volume 26, p. 518, says, "Exemplary or vindictive damages cannot be recovered." In connection with this is cited Taylor v. Carpenter, 2 Woodb. & M. 21, Fed.

Cas. No. 13,785 (see Id., 11 Paige, 292; Id., 2 Sandf. Ch. 603), where it is said by Woodbury, Circuit Justice:

"On the question of damages, however, in respect to giving 'exemplary' ones, there is some doubt whether the charge is in the exact form deemed proper under modern analyses and decisions on this point. * * * That the jury should have given more than nominal damages, I have no doubt; and I have as little doubt that there were materials enough in the case from which to estimate actual damages, such as the probable extent of sales by the defendant under these marks, and the loss of sales and profits therein by the plaintiffs. The jury would, in a case like this, if a known and deliberate imitation, often renewed and very prejudicial to the plaintiff, not be very nice in their data and inferences, but be sure to give enough to cover all losses and prove an ample indemnity. * * * Not 'smart money' or 'vindictive damages,' but full atonement for the wrong done. * * * In a case like this, if in any, no reason exists for giving greater damages than have actually been sustained, or what have been called 'compensatory.' "

Complainants' counsel, on the other hand, cite the opinion of Lacombe, Circuit Judge, in Publishing Co. v. Monroe, 19 C. C. A. 429, 73 Fed. 196, 201, to the following effect:

"Plaintiff in error contends that the court erred in instructing the jury that it might award exemplary damages. That in certain classes of cases juries are authorized to give punitive or exemplary damages, to punish a wrongdoer and to deter others from the commission of a like wrong, is a well-settled law in the federal courts and in the courts of this state. Day v. Woodworth, 13 How. 370, 14 L. Ed. 181; Railroad Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Voltz v. Blackmar, 64 N. Y. 440. In such cases exemplary damages may be given, in addition to what may be proved to be the actual money lost of the plaintiff. It is contended, however, that, when no actual damages are proved, exemplary damages should be allowed. In support of this proposition, three cases are cited from the Texas Reports, but the law of that state is peculiar on the subject of exemplary damages (Sedg. Dam. § 359, and cases there cited), and its decisions inapplicable where a different law prevails. Of the other cases cited on the brief, Graham v. Fulford, 73 Ill. 596, was an action on a special statute. Kuhn v. Railroad Co., 74 Iowa, 141, 37 N. W. 116, Stacey v. Publishing Co., 68 Me. 287, and Maxwell v. Kennedy, 50 Wis. 649, 7 N. W. 657, sustained the contention of the plaintiff in error. They are, however, at variance with the theory upon which exemplary damages are awarded in the federal courts, namely, as something additional to and in no wise dependent upon the actual pecuniary loss to the plaintiff, being frequently given in actions where the wrong done to the plaintiff is incapable of being measured by another standard. Day v. Woodworth, supra; Wilson v. Vaughn, 23 Fed. 229."

In the above case the plaintiff had sued for damages in an action at common law, and the jury were instructed that they might, under the circumstances, award exemplary damages. It was held that it was not error to instruct the jury that they might award exemplary damages if they found that the circumstances showed wanton disregard of plaintiff's rights. But the case under consideration is an action in equity, and the decision of the court in Publishing Co. v. Monroe cannot be considered as applicable. The case of Day v. Woodworth, 13 How. 369, 14 L. Ed. 181, cited in Publishing Co. v. Monroe, was also an action at law, in which it was decided that the jury might give exemplary damages in an action of trespass.

There does not appear to be any example of a case in equity in which a master, upon an accounting, has acted as a jury in a case at law,

and awarded punitive damages. The complainants in the case at bar might have chosen to prosecute their rights by an action at law. But they have decided to apply for relief to a court of equity. The functions of a master on an accounting do not include the imposing of exemplary damages by way of punishment. They are confined to the estimation of the profits realized by the infringer, on the one hand, and of such damage as has been suffered by complainants, on the other, for the purpose of giving him compensation therefor. Complainants are not entitled to an award of punitive damages. Respondent contends that it ought not to be compelled to pay the costs of the accounting, upon the ground that its infringement was inadvertent, and that it discontinued such infringement directly it was notified by complainants. The alleged inadvertence of the infringement has been completely disposed of by the report of the master adversely to respondent's contention. In Sawyer v. Kellogg (C. C.) 9 Fed. 601, Nixon, District Judge, said:

"As to the matter of costs, we find nothing in this case to take it out of the ordinary rule that a decree for an infringement and an injunction carries costs. The only reason suggested by the counsel for the defendant was that no demand was made before suit that the defendant should cease to use the label. We have never understood that in such cases a demand was necessary, nor that an infringer who stoutly contests the suit to the end should be relieved from the payment of the costs which have been incurred in consequence of his wrongdoing and litigation."

There has been no formal submission on the part of the respondent, accompanied by an offer to pay the accrued costs, and the facts do not warrant any departure from the ordinary rule that the losing party pays all costs. The report of the master will therefore be confirmed, and the costs on accounting will be taxed in favor of complainants.