WORCESTER BREWING CORP. v. RUETER & CO.

(Circuit Court of Appeals, First Circuit.   November 14, 1907.)

No. 724.

1. TRADE-MARKS AND TRADE-NAMES—WORDS SUBJECT TO APPROPRIATION—"STERLING."

Although the word "sterling" is ordinarily descriptive of quality, and is not popularly used in connection with ale, one who adopted it to identify a particular manufacture of ale may be entitled to protection against its use by another in such manner as to create confusion as to the origin or identity of the two products.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 6, 12.

For other definitions, see Words and Phrases, vol. 7, p. 6658.]

2. SAME—SUIT FOR INFRINGEMENT—RIGHT TO ACCOUNTING—LACHES.

Under the circumstances of this case, complainant, although it may be entitled to an injunction, is barred by its laches from the right to an accounting for profits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 112.

Laches as defense in suit for infringement, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Louis W. Southgate, for appellant.

George W. Anderson (Conrad J. Rueter, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.   This is a bill in equity to restrain unfair competition regarding the use of the words "Sterling Ale" in connection with ale put on the market by the respondent below, now the appellant. We will herein call the complainant below the complainant, and the respondent below the respondent. The main facts are stated in the opinion of the Circuit Court ordering a decree for the complainant for an injunction and an account. The main issue arises from the fact that the word "Sterling" is claimed to be one in common use and ordinarily descriptive of quality. The first question is whether the injunction should be affirmed, and the second is whether there should be an account of profits.

The word "Sterling," although in common use, and although ordinarily descriptive of quality, is not properly used in connection with ale,

and would hardly be used in that connection except for some special purpose. For such special purpose the complainant had adopted the word in connection with its ale, and had occupied the market, and its ale had become known in the trade, both wholesale and retail, as "Sterling Ale." The respondent corporation was organized by a gentleman who had been in the employment of the complainant selling "Sterling Ale," and who, therefore, understood its quality and the value of the word "Sterling" in connection therewith. The respondent made no effort to make known to the public the difference between the origin of its ale and the origin of the complainant's. Therefore, so far as the injunction is concerned, all we need add is what was quoted by Judge Coxe, in an opinion given in behalf of the Circuit Court of Appeals for the Second Circuit in Ludington Novelty Co. v. Leonard, 127 Fed. 156, 62 C. C. A. 269, in regard to a word of a somewhat descriptive class, as follows:

"If the complainant, or its assignors, had not brought the word into general use as applicable to the style of game board and games in question here, it is not probable that it would have been generally so used or understood, or that the defendants would have made use of it in the way they have."

On the question of an accounting, if it were an open one, we might question whether on principle there could be any, inasmuch as on the record before us the complainant has no trade-mark in the proper sense of the word, so that the respondent has not availed itself of what was the complainant's property. The federal statute permitting the recovery of damages by a bill in equity relates only to suits on patents for inventions. However, in Singer Manufacturing Company v. June Manufacturing Company, 163 U. S. 169, 204, 16 Sup. Ct. 1002, 41 L. Ed. 118, which involved only the question of unfair trade, the court expressly directed an accounting of profits. This seems to settle that there may be an accounting wherever the ground of a proceeding in equity is the same as that at bar.

It appears that the respondent sold in all 17,600 barrels of ale under the name of "Worcester Sterling Ale" between some time in 1900 and April 1, 1905. What has been sold since April 1, 1905, the record does not show. We might well suppose that the master, if the case was sent to one, would conclude that all the ale thus sold was marketed on account of the use of the word "Sterling." We might suppose this, because the record shows that the complainant's ale thus designated has a peculiar quality, so that perhaps the unlawful sales created an addition to the respondent's market equal to the number of barrels sold which bore the word complained of. Consequently, there seems to be a substantial basis for an accounting so far as the sum involved is concerned, and the question which the record presents arises out of alleged laches on the part of the complainant. This does not seem to have been especially considered by the Circuit Court, except as it described the complainant's delay as blameworthy, though not enough to deprive him of all remedy.

In October, 1904, notice of the complainant's claim to control the word "Sterling" was given the respondent. This bill was filed on November 3, 1904. In July, 1903, as shown by the testimony of Mr. Rueter, he not only purchased at Bellows Falls a bottle of respondent's

"Worcester Sterling Ale," with that label on it, but he also then stated that it was an imitation brewed in Worcester, showing that he had previous knowledge of it.   He was the vice president and treasurer of the complainant corporation.   Therefore, as he made a report of the facts to the directors immediately, the corporation must be charged with notice. Nevertheless, no warning was given the respondent until October, 1904.   The respondent expended approximately $1,500 in advertising its "Worcester Sterling Ale," having begun this subsequently to May 1, 1903.   It is plain that this very considerable expenditure in the way of signs and advertising was mainly incurred after what happened at Bellows Falls.

The main fact to which we call attention in this connection is that it is to be presumed that the respondent was acting in good faith, believing that it had a right to use the word "Sterling."   This arose partly from the fact of the nature of the word, one of common description of quality in certain classes of goods, partly from the fact that in registering its Massachusetts trade-mark the complainant had stated that the word was not essential, and partly from the advice of its counsel.   Under these circumstances the respondent ought not to be a sufferer by reason of lack of diligence on the part of the complainant in giving warning, either with reference to the period before the warning was given or pending a reasonable time thereafter to ascertain its legal rights.

If the case had been free from doubt, and if, consequently, the course of the respondent had amounted to willful piracy, the circumstances to which we have referred might not have been of moment; but, as it stands, the equity of the complainant as to an accounting is especially weakened by the fact that the expenditures made by the respondent in pushing its business were largely after the complainant had full notice of the infringement in the manner we have shown. The delay was not very long, a little more than a year; but on the question of laches, the length of the delay is more or less important in connection with the other circumstances.   Moreover, it is difficult to understand how the complainant could have had knowledge of the facts to which we have referred, and have remained quiet for more than a year, except on the hypothesis that it impliedly waived the infringement for the time being.   Quite likely the complainant underestimated the importance of the business done by the respondent, and had no intention of seeking any remedy until it came later to appreciate that the respondent's business was increasing, while its own was falling off.   On any theory, the complainant ought not to benefit at the cost of a loss to the respondent.

McLean v. Fleming, 96 U. S. 245, 256, 24 L. Ed. 828, and sequence, and Menendez v. Holt, 128 U. S. 514, 524, 9 Sup. Ct. 143, 32 L. Ed. 526, settled the rule that circumstances may sometimes justify an injunction while the delay attending the proceedings would bar an account of profits; though it is true that, in these cases, the periods of delay were so long that neither of them offers a close analogy for the case at bar.   In Fairbank Co. v. Luckel Co. (C. C.) 106 Fed. 498, affirmed by the Court of Appeals for the Ninth Circuit, 116 Fed. 332, 54 C. C. A. 204, it was, however, observed with reference to the length

of time which may make laches of importance, that "it will necessarily depend upon the intention of the infringer whether fraudulent or not." It was also said that it was doubtful whether fraudulent intention existed on the part of the respondent, and that, "in such a case, laches for a much shorter period than that which in fact had intervened might have been held sufficient to justify the denial of relief by way of accounting." Also in The French Republic v. Saratoga Vichy Company, 191 U. S. 427, 439, 24 Sup. Ct. 145, 48 L. Ed. 247, the opinion, on the defense of laches, gave weight to the fact that there was little evidence in the record of any purposed fraud.

Very sensible statements of the rules as to laches are found in Sebastian's Law of Trade-Marks, 4th Ed. (1899), at pages 206 and 207. It is there said:

"Even if the delay has not been such as to disentitle the plaintiff to his injunction, it may yet obtain some indulgence for the defendant; as, for instance, the permission to dispose of the wares on which he expended money in consequence of the plaintiff's delay. Or the injunction may be granted and the account of profits or damages by which it is usually accompanied withheld."

A powerful inducement to deny an accounting by reason of laches was spoken of by Lord Justice Mellish in Ford v. Foster, L. R. 7 Ch. 611, 633, where it was suggested that, instead of getting profits according to the practice in equity covering six years while he was quiescent, the complainant would probably get from a jury only 40 shillings damages, on the ground that there would be no evidence of specific loss.

It is suggested by the complainant that its delay was only such as was necessary to enable it to investigate the truth before involving itself in litigation, and that, also, the facts known to it in July, 1903, did not justify it in assuming that the respondent was deliberately using its trade-mark. What happened at Bellows Falls disproves any such necessity. Whether or not Rueter supposed the expression complained of was being deliberately used is of no particular consequence, because, if it was being innocently used, there was, at least, as much occasion for giving prompt warning. The fact is that, in July, 1903, even if it preferred to delay litigation for any just reason, the complainant certainly had all the materials necessary to enable it to give the respondent prompt notice.

The judgment of the Circuit Court is reversed, and the case is remanded to that court with directions to enter a decree for an injunction only; and the appellant recovers its costs of appeal.