**MOSSOP v. ZAPP.	(No. 5700.) ***

(Court of Civil Appeals of Texas. San Antonio. Nov. 8, 1916. Rehearing Denied Dec. 6, 1916.)

1. FRAUD ⚖═61—EXEMPLARY DAMAGES.

Defendant endeavored to induce plaintiff to trade her bonds with him, but she refused to do so unless her attorney should approve the trade, and defendant went to such attorney, and, when

---

the latter expressed his disapproval, told him that he would give the matter up, but, instead of doing so, went to plaintiff and represented to her that her attorney had approved the trade, which she then consented to make, defendant agreeing, as part consideration, to have a note of plaintiff's canceled at his expense, but actually writing out the agreement, with fraudulent purpose, so as to require plaintiff to deliver the note to him at her cost. *Held*, that defendant was guilty of deliberate fraud, which was the result of a malicious intent and design to injure plaintiff, and which did injure her, and plaintiff could recover exemplary damages against him.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 63; Dec. Dig. ⊙⊐61.]

2. FRAUD ⊙⊐22(1)—NEGLIGENCE OF DEFRAUD-ED PARTY.

Plaintiff, who traded her bonds with defendant, was not negligent in relying on defendant's statement to her that her attorney had approved the trade, plaintiff having told defendant to submit his bonds to the attorney, and, if he advised the trade, to return and report his approval.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 19, 20, 22, 23; Dec. Dig. ⊙⊐22(1).]

Error from District Court, Fayette County; Frank S. Roberts, Judge.

Suit by Mrs. Isolda Zapp against Y. F. Mossop. To review a judgment for plaintiff, defendant brings error. Judgment affirmed.

See, also, 183 S. W. 839.

John T. Duncan, of La Grange, for plaintiff in error. C. D. Krause, of La Grange, for defendant in error.

SWEARINGEN, J. The issues joined by the parties in the trial court are concisely and correctly stated by defendant in error, as follows:

"Defendant in error instituted this suit in the district court of Fayette county, Texas, on October 20, 1914, by petition, in which, for cause of action, she alleged that, on or about May 9, 1914, plaintiff in error, Mossop, came to her, at her home in Fayetteville, in Fayette county, Texas, and there proposed to trade and sell her bonds of the Pecos & Toyah Lake Irrigation Company, a corporation; that she then referred plaintiff in error with his proposition to her attorney, and told him that she would be guided in the matter solely by the advice and counsel of her attorney; that thereupon plaintiff in error went and submitted his proposition to her attorney, who, after investigating it and the security therefor, in unmistakable terms and words announced and stated to plaintiff in error that he did not favor the proposition, and could and would not recommend it, and could not and would not advise defendant in error to invest in said bonds, as he did not consider the security ample, sufficient, and satisfactory, whereupon plaintiff in error stated and announced to said attorney that he would do nothing further in the matter; that he would not return to defendant in error, nor further prevail on her taking said bonds, but would leave directly for Kansas City, Mo.; that, notwithstanding this, and having misled her attorney by such statements, plaintiff in error immediately procured a conveyance and returned to her home, which is 14 miles removed from her attorney's offices, and there renewed his negotiations of said bonds with her, telling and assuring her that her attorney looked with favor upon the proposition and said bonds, and recommended and advised her taking same, and that said bonds were fully worth their face value,

and the payment thereof was fully and amply secured by first-class and high-grade security, and she would never suffer loss thereon; that all of said statements and representations so made by plaintiff in error to her were and are, and were known to plaintiff in error to be, false and untrue, and were deliberately and willfully made by plaintiff in error to her for the purpose, as they did do, of overreaching, deceiving, and defrauding her out of her property; that she is not learned in, nor familiar with, such matters, and therein was dependent upon the advice and counsel of her attorney; that she believed plaintiff in error to be truthful, had confidence in his integrity and honesty, and relied and acted upon the statements and representations so made to her by him, not suspicioning that he was deceiving and perpetrating a fraud upon her, as he was then doing, as she later learned and discovered, and agreed to take $3,000 of said bonds, paying therefor $1,200 in cash, and agreeing to pay $300 more and to transfer and assign to plaintiff in error 60 shares of Alamo Finance stock at an agreed value of $1,500, and plaintiff in error agreeing to release and relieve her from any and all liability, if any, on her note for $500 held by J. C. Speckels, but that, notwithstanding such agreement, plaintiff in error, by acceptance of a written instrument he gave her, studiously, willfully, deliberately, deceptively, and fraudulently sought to charge, obligate, and bind her to deliver and transfer to him said Speckels' $500 note, and thus fraudulently increase her liability to him and reap from her a far greater consideration for said bonds than was agreed upon, which fraud she did not discover until some time later, when it was pointed out to her by her attorney; that had she known the facts, and the deliberate, studied, and willful imposition, fraud, and swindle perpetrated upon her by plaintiff in error, she would not have parted with her money, and would not have made and entered into such contract and agreements with plaintiff in error, and she invoked the powers of the judge as a chancellor to rescind and annul such contract and agreements, and for adequate relief. She then tendered into court the bonds for such disposition thereof as justice and the exigencies of the case required, and further alleged that the deceptions and fraudulent acts and conduct of plaintiff in error compelled her to bring this suit and incur an attorney's fee, which she says is reasonably worth $300, and for which she prayed judgment. She alleged that by reason of and as a result from the fraudulent acts and conduct and deceptions of plaintiff in error, she has suffered and undergone much mental anguish and physical pain and suffering, to her great damage in the reasonable sum of $2,000, for which she also prays judgment. And she closes her petition with prayer, reading as follows: 'Wherefore plaintiff prays that citation issue to defendant as required by law, and that upon hearing she have judgment against defendant, setting aside, annulling, vacating, and canceling the trades, transactions, contract, and agreements between plaintiff and defendant herein complained of; that she have judgment against defendant for the $1,200 by her paid to defendant, as hereinbefore set out, with legal interest thereon from May 9, 1914, the date of such payment; that she have judgment against defendant for the attorney's fees by her in this behalf incurred, or to be incurred, and for all actual and special, exemplary, punitive, and vindictive damages that she may show herself entitled to, and for all costs by her in this behalf incurred or expended, and that she have all such other special and general relief, legal or equitable, that she may be entitled to, and so she will ever pray.'

"Plaintiff in error made general denial, alleged that the attorney's fee cannot be recovered as actual damages, and could only be con-

sidered by the court by way of punitory damages; alleged that he has no objection to plaintiff, defendant in error herein, having judgment against him for the $1,200 and the $300 note, and, upon failure to return said note for judgment in lieu thereof for $300, alleged that the trade made was greatly to this defendant in error's interest, but that if she is unwilling to abide by it, he is willing that it be rescinded, but required, before entry of such judgment, that she tender into court or deliver to him or his attorney the bonds.

"Trial upon the issues raised by these pleadings was had before the court, without the intervention of a jury."

Judgment was rendered for defendant in error rescinding the contract, for $1,500 with interest, and for $150 exemplary damages.

[1] Plaintiff in error complains in his first and fifth assignments of error that the court erred in rendering judgment for exemplary damages. There was ample evidence to the effect: That defendant in error refused to trade for the bonds offered her by plaintiff in error. That she would buy them if her attorney examined them and their security and advised her to trade for them. That she told plaintiff in error to submit the bonds to her attorney, naming him, and if the attorney advised to trade for them, to return and report the attorney's approval to her. That defendant in error relied upon the integrity of plaintiff in error. That the attorney did examine the bonds, and stated positively to plaintiff in error that he did not approve the bonds, and advised that defendant in error refuse to trade for them. That plaintiff in error thereupon, with a settled purpose to injure defendant in error, prevented the attorney from personally giving his advice to defendant in error by stating that plaintiff in error would not see defendant in error again, had dropped the trade, and would at once leave for a distant state. Having by this false statement deceived the attorney, and in furtherance of his design to injure defendant in error by appropriating to his own use $1,200, at least, of her money, plaintiff in error, without delay, hastened by buggy 14 miles into the country to the home of defendant in error, and there, taking advantage of the trust placed in him by defendant in error, falsely reported to her that her attorney had examined the bonds, approved them, and told defendant in error that the attorney advised defendant in error to trade for them. That defendant in error believed plaintiff in error, and thus, induced by the false statement and conduct of plaintiff in error, made the trade for the bonds, delivering to plaintiff in error her check for $1,200, which was paid. A further circumstance tending to prove the malicious design of plaintiff in error to injure defendant in error was the fact that plaintiff in error agreed, as part of the consideration for the trade, to have canceled at his expense and without further cost to defendant in error a $500 note executed by defendant in error, and at that time

the basis of a lawsuit against defendant in error by Mr. Speckels. But plaintiff in error, with fraudulent purpose, wrote the agreement, which he signed, in such words as required defendant in error, at her cost, to deliver the note to plaintiff in error. The court, upon this and similar facts in evidence, found that plaintiff in error was guilty of deliberate fraud, and that the fraud was the result of a malicious intent and design to injure defendant in error, and did injure defendant in error. Under such circumstances the law of Texas now authorizes a recovery of exemplary damages as is unmistakably held in the case of Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061. Sedg. on D. §§ 359, 367, note 141.

[2] Defendant in error was not negligent in relying upon the statement made to her by plaintiff in error. Barton v. Cox, 176 S. W. 796.

The second, third, and fourth assignments present no reversible error, and are overruled.

The judgment of the trial court is affirmed.

---

⚬⚬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes