## COCA-COLA CO. v. DIXI-COLA LABORATORIES, Inc., et al.

### No. 5431.

Circuit Court of Appeals, Fourth Circuit.

Feb. 4, 1946.

After Reargument May 3, 1946.

---

John A. Sibley, of Atlanta, Ga., and Hilary W. Gans, of Baltimore, Md. (Edwin W. Canada, of Atlanta, Ga., on the brief), for appellant and cross-appellee.

W. Hamilton Whiteford, of Baltimore, Md., and Joseph S. Mead, of Birmingham, Ala., for appellees and cross-appellants.

Before SOPER and DOBIE, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

Upon the former appeal in this case, Dixie-Cola Laboratories, Inc. v. Coca-Cola Co., 4 Cir., 117 F.2d 352, our attention was directed mainly to the contention of the Coca-Cola Company that the names Dixi-Cola, Marbert Cola and Marbert the Distinctive Cola infringe the trade mark "Coca-Cola" because the word "Cola" leads the public to believe that the defendants' product originated with the Coca-Cola company. This contention was opposed not only by the defendants but also by the manufacturers of other cola beverages who in one way or another co-operated with the defendants in presenting their appeal. We rejected the contention and held that the well established trade mark of the Coca-Cola Company is not infringed by the mere use of names which include the suffix "cola", especially since the evidence showed that the word has become a generic term generally used in common by a number of manufacturers as part of their trade names to indicate a kind or class of beverage. We held, however, that the evidence in the case justified the finding that the defendants' product had been palmed off in soda fountains and bar rooms as Coca-Cola with the knowledge and approval of the defendants, and therefore upheld the injunction issued by the District Court to prohibit such illegal action.

When the case was remanded to the District Court, the interlocutory decree was modified and a special master was appointed to hear evidence and report what damages the plaintiff had sustained and what profits the defendants had realized from their illegal actions. The report of the

special master, as modified in some particulars by the District Judge, is now the subject of an appeal by the plaintiff and a cross appeal by the defendants.

The appeal of the Coca-Cola Company presents the following questions: (1) The finding of the master that certain evidence offered by the plaintiff was insufficient to show that prior to 1942 certain distributors who bottled and sold defendants' product were putting up the beverage in quart size bottles and selling them to taverns, which made a practice of substituting defendants' product for Coca-Cola when ordered by customers in mixed drinks. The plaintiff contended that the evidence showed that this practice was going on in such a way that the defendants had or should have had knowledge thereof. The special master held that the burden of proof was on the plaintiff to show that the defendants had knowledge of the substitution and that the evidence as to prevalence of practice before 1942 was unsatisfactory; and the District Court affirmed the finding. The appellant contends that this holding was in error since the evidence was sufficient for the purpose and since the master placed too great a burden of proof on the plaintiff in holding that actual knowledge by the defendants of the substitution was required, whereas it was sufficient to show that the defendants by the exercise of reasonable care should have known of the illegal practice. Our examination convinces us that there was no error in this respect. The evidence offered was tenuous and it is plain from a reading of all that the master said on the point that he did not exaggerate the burden of proof. Indeed he said expressly that if the practice of substituting the defendants' product for plaintiff's in serving mixed drinks had been a general one before 1942, he would have held that a prima facie case of fraud had been made out since the defendants could not shut their eyes to facts which must have been known to them.

(2) The plaintiff contends that the court and the master were wrong in not requiring an accounting generally for goods sold under the names of Dixie-Cola and Marbert Cola, and in not receiving evidence that after the passage of the interlocutory decree on March 5, 1940, the defendants made use of certain labels, bottle caps and advertising matter so similar in general effect to the corresponding instrumentalities of the Coca-Cola Company as to deceive the public and lead it to buy defendants' product in the belief that it was Coca-Cola. After the reference for an accounting the master ordered the defendants to produce yearly statements beginning with the first year in which the defendants' products were sold and showing the gross receipts from sales of products sold under various names. Included were products sold under names such as Apola Cola, which had been held by the District Court and by this court on appeal to infringe the plaintiff's trade mark; and also included were products sold as Dixi-Cola, Marbert Cola and Marbert the Distinctive Cola, held by this court not to infringe. The District Court held on review of the interim report of the master that an account of the proceeds of sales under noninfringing names should not be required. We think that this holding was wrong. The decision of this court on the first appeal determined that the mere use of noninfringing names should not be enjoined but approved the injunction of the District Court insofar as it related to fraudulent or deceptive acts in the marking of defendants' goods under these names. The interlocutory decree was based in part upon findings of fact of the District Judge that the defendants had engaged in certain acts of unfair competition, in that they had induced and encouraged customers to pass off defendants' products on calls for Coca-Cola and also that the distributors of defendants' products, with the knowledge of defendants, had sold these products in containers which bore no trade mark or other means of identification, and also in containers which bore the Coca-Cola name, and that defendants and other distributors had sold defendants' product in refilled containers painted with the distinctive red color used by the plaintiff in distributing its product, and that said acts were committed by the defendants with the deliberate intent and purpose of appropriating plaintiff's good will.

We think that under these holdings the plaintiff was entitled to further relief, if it should be found upon consideration of the evidence that the defendants derived profits from the acts of unfair competition in the use of deceptive materials. See Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Hiram Walker & Sons v. Grubman, D.C.S.D.N.Y., 222 F. 478; Worcester Brewing Corporation v. Rueter & Co., 1 Cir., 157 F. 217; Walter Baker & Co. v. Slack, 7

Cir., 130 F. 514; N.K. Fairbank Co. v. Windsor, C.C.W.D.N.Y., 118 F. 96; Williams v. Mitchell, 7 Cir., 106 F. 168; W. R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co., 100 Me. 461, 62 A. 499, 4 L.R.A.,N.S., 960; 52 Am.Jur., Trademarks, Tradenames and Trade Practices, 147; 63 C.J., Trade-Marks, Trade-Names and Unfair Competition, 275 (2) (a). Moreover, we think that the evidence should not be confined to actions which occurred prior to the interlocutory decree on March 5, 1940. The plaintiff presented certain evidence to the master that after that date the defendants engaged in the use of lables, bottle caps and advertising matter of a deceptive nature. The master rejected this evidence since he felt bound by the ruling of the District Court upon his interim report and this ruling was affirmed by the District Court when the final report of the master was considered. It is generally held that in cases of this sort the plaintiff is entitled to recover for the period from the beginning of the fraudulent conduct to the date of the taking of the testimony. G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369. Such evidence indeed has been received in this case for the plaintiff was allowed to prove at the hearing before the special master not only that the defendants' product was fraudulently substituted for Coca-Cola in sales to customers at soda fountains with the knowledge and connivance of defendants prior to the date of the interlocutory decree, but also that in the years 1942 and 1943 similar substitution was practiced in bar rooms in the service of mixed drinks to customers; and upon this evidence the master calculated the profits on the illegal business which the defendants enjoyed and should account for.[1]

We do not undertake to determine what weight should be given to the evidence as to profits earned by the defendants on their products sold under the non-infringing names or what weight should be given to the evidence that the defendants continued to use deceptive material after the promulgation of the interlocutory decree. We hold merely that our prior decision was not intended to prohibit the reception of evidence on these points and that the weight to be given to it should be determined by the District Court in connection with all the other evidence that has heretofore been offered in the case.

The Coca-Cola Company complains because the special master in a ruling approved by the District Court refused to allow punitive damages despite the wilful and fraudulent conduct of the defendants in connection with the fountain trade. The master based his ruling primarily on the rule that punitive damages cannot be recovered without proof of actual loss. He pointed out that the plaintiff had not shown that its profits would have been increased or its losses diminished if it had made the sales which the defendants made. This conclusion is correct. The Federal Trade Mark statute, 15 U. S.C.A. § 99, empowers the court to increase the damages suffered by plaintiff for infringement of a registered trade mark to an amount not exceeding three times the amount of the damages sustained, but this provision is obviously applicable only when damages actually have been sustained. The same is also true with respect to the general power of a court of equity to award damages. In the absence of express statutory provision, a court of equity is without power to assess exemplary or punitive damages. The provision of Rule 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that there shall be one form of action does not alter this situation for it does not abolish the distinction between law and equity in the federal court. See, Sedgwick on Damages, 9th Ed. § 371; United States v. Bernard, 9 Cir., 202 F. 728, 732; Schloss v. Silverman, 172 Md. 632, 642, 192 A. 343; 25 C.J.S., Damages, § 117, p. 705, and § 118 p. 713; Bellavance v. Plastic-Kraft Novelty Co., D.C.D.Mass., 30 F.Supp. 37; Grauman v. City Company of New York, D.C.S.D.N.Y., 31 F.Supp. 172; Fitzpatrick

---

[1] By the decree of the District Court it was adjudged that the plaintiff was entitled to profits realized by the defendants on sale of their products as follows:

| | |
|---|---|
| Sale of Marbert Cola, 1937 to 1940, to fountains | $3,074.71 |
| Sale of Marbert Cola, 1937 to 1940, to distributors | 4.21 |
| Sale of Lola Cola, 1937 to 1941 | 4.74 |
| Sale of Apola Cola, 1938 to 1941 | 624.49 |
| Sale of Marbert Cola to bottlers, 1943 | 617.92 |
| Sale of Kola | 250.00 |
| | $4,576.07 |

No damages were found to have been sustained by the plaintiff.

v. Sun Life Assur. Co., D.C., 1 F.R.D. 713; Monks v. Hurley, D.C.D.Mass., 45 F.Supp. 724; Restatement of the Law of Torts, § 745, Comments (e) and (f). Cf. Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708; Wawak & Co. v. Kaiser, 7 Cir., 129 F.2d 66.

4. The Coca-Cola Company also contends that the court was in error in refusing it permission to file a bill for a supplemental injunction based upon facts which have occurred since the date of the interlocutory decree and entitle the plaintiff to further relief. The plaintiff alleged that since October 10, 1944, its investigators have visited one hundred and six bars and taverns in five cities of the United States in which the defendants' products are sold, and purchased beverages in five hundred and forty-six instances, and that in seventy-four per cent thereof, the dealers served defendants' product in glasses and not in a bottle and in most instances filled the glass from the bottle in such a manner that the purchaser could not recognize the distinguishing label. The plaintiff also alleged that since the interlocutory decree the defendants have continued to use the characteristic color scheme long associated with the advertising of Coca-Cola and hence are violating the injunction contained in the interlocutory decree and are encouraging and inducing the palming off of their beverage for Coca-Cola. The defendants have discontinued the sale of their product to soda fountains, where fraudulent substitution took place; but the plaintiff seeks the opportunity under its supplemental bill to prove that defendants now make sale of their product in much larger quantities to bars and taverns where the same deceptive and fraudulent practices are used. The plaintiff therefore seeks to broaden the scope of the injunction contained in the interlocutory decree so as to enjoin these practices.

The District Court refused the supplemental bill on the ground that the practices therein referred to were already covered by section 6(f) of the interlocutory decree which enjoined the defendants from giving to any part of their merchandise, not sold by them or their distributors in bottles to the consumers, a color resembling Coca-Cola if or when defendants know or in the exercise of reasonable care should know that the purchaser intends to dispense the product to the consumer other than in bottles.

It appears to us that if the plaintiff is given the opportunity to present evidence of illegal acts of infringement or unfair competition up to the time of the hearing before the special master or the District Court, it will be enabled to obtain all the relief to which it is entitled, and that it is immaterial whether the evidence is received in the present proceeding or under a supplemental bill. We therefore hold on this branch of the case that the District Court should determine which procedure will best serve the interests of justice, so long as the plaintiff is given the opportunity to present evidence relative to acts of infringement or unfair competition committed by the defendants.

5. The plaintiff complains of the denial by the master of punitive damages notwithstanding the master's finding that the wilful and fraudulent conduct of the defendants would have justified an allowance thereof in an action at law. The master held that such damages are not recoverable in equity. He pointed out that under the federal statutes, 15 U.S.C.A. §§ 96, 99, the power to allow treble damages is based on the finding of actual damages which are lacking here; and he declined to follow the decisions in Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708 and Wawak & Co. v. Kaiser, 7 Cir., 129 F.2d 66. Moreover, he showed that the distinction between law and equity in the federal courts is not abolished by Rule 2 of the Federal Rules of Civil Procedure. We find no error in these conclusions. In the absence of statute the function of a court of equity in the award of damages is confined to compensation and does not include the authority to award damages in the nature of a penalty; and hence one who appeals to a court of equity for relief waives vindictive damages.[2] We find

---

[2] See, United States v. Bernard, 9 Cir., 202 F. 728; Hennessy v. Wilmerding-Loewe Co., C.C.N.D.Cal., 103 F. 90; Taylor v. Ford Motor Co., D.C.Ill., 2 F.2d 473; Moore v. Carr, 224 Ala. 275, 139 So. 269; Littlejohn v. Grand I. B. of Locomotive Engineers, 92 Colo. 275, 20 P.2d 311; Winthrop Chemical Co. v. Blackman, 288 N.Y.S. 389; Mid-Continent Petroleum Corporation v. Bettis, 180 Okla. 193, 69 P.2d 346; Bird v. Wilmington & M. R. Co., 8 Rich.Eq., S.C., 46, 64 Am. Dec. 739; Sanders v. Anderson, 10 Rich. Eq., S.C., 232; Bush v. Gaffney, Tex.

nothing in the decisions in Maryland, where the distinction between law and equity is preserved, at variance with the traditional view. It is taken for granted in the only Maryland case that has come to our attention where the point is mentioned. Jacob Carmel et al. v. Jos. Lipnick et al., 3 Balto. City Reports, 475.

### Cross Appeal of Dixi-Cola Laboratories, Inc. et al.

1. On the cross appeal the principal question is raised by the contention of the defendants that they should not have been enjoined from giving to their product the dark brown color characteristic of cola beverages when defendants knew, or by the exercise of reasonable care should have known, that the beverage would be sold to the consumer other than in bottles. Section 6(f) of the interlocutory decree prohibited the defendants from giving to their product a color resembling the color of the plaintiff's product under such circumstances, and we affirmed this portion of the decree on the ground that the imitation of the color of Coca-Cola on the part of the defendants formed part of their scheme of unfair competition. We are now asked to reconsider this decision for reasons that may be summarized as follows: There are many cola drinks and all of them, without exception, are given the same artificial dark reddish brown color by the use of caramel and since the public has become accustomed to this appearance, a cola drink of a different color would not be salable. The color of the drink, therefore, is functional, and since it is not clothed with a special significance identifying the plaintiff's goods from all others, it may be fully used by all makers of cola drinks. See Restatement Torts, §§ 741 and 742.

The defendants assert that in obedience to the injunction contained in the interlocutory decree, they have discontinued all sales to bottlers who sold to soda fountains, and that in addition they have taken all reasonable steps to put an end to all improper use of the beverage. To this end they employed an agent to investigate the conditions in the tavern trade and to warn bottlers who served the trade and tavern keepers themselves to abstain from all palming off. The investigator found that cola beverages were purchased by taverns in quart size bottles from which consumers were served who asked for mixed drinks under the name of "rum and coke" and that in twenty-five per cent of such cases the cola drink served was not Coca-Cola but the product of defendants or of some other cola producer. The report of this investigator presented in evidence covered the activities of two hundred and fifty bottlers. The plaintiff selected only seventeen of the two hundred and fifty and sought to recover the profits derived by the defendants from the sales of their product of the seventeen bottlers to the extent that it was resold by the bottlers to taverns in large bottles intended for use in preparing mixed drinks. The master found liability in the case of only seven bottlers and estimated aggregate profits in the sum of $617.92. There was no evidence that the defendants induced or encouraged any of the seventeen bottlers to recommend to their tavern customers that the defendants' product be substituted for the plaintiff's, or that any of the seventeen bottlers encouraged or induced their tavern customers to do so, although many of them either knew or suspected that defendants' product was being served in mixed drinks in taverns on calls for rum coke. It is urged that the evidence of improper conduct on the part of tavern keepers is negligible and that in any event the defendants had no knowledge thereof prior to the investigation and made earnest efforts to eliminate all such improper practices, in addition to cutting off the sales of their goods to soda fountains altogether. Under these circumstances it is contended that the District Court was no longer justified in enjoining the defendants from using the distinctive cola color in the manufacture

Civ.App., 84 S.W.2d 759; Whiting v. Adams, 66 Vt. 679, 30 A. 32, 25 L.R.A. 598, 44 Am.St.Rep. 875; Given v. United Fuel Gas Co., 84 W.Va. 301, 99 S.E. 476; Karns v. Allen, 135 Wis. 48, 115 N.W. 357, 15 Ann.Cas. 543; 25 C.J.S., Damages, § 117, p. 709; 15 Am.Jur., Damages, § 268, p. 704; 15 Ann.Cas. 547; 28 Am.St.Rep. 874; Sedgwick on Damages, 9th Ed., 371; Cf. Union Oil Co. of California v. Reconstruction Oil Co., 20 Cal.App.2d 170, 66 P.2d 1215. South Penn Oil Co. v. Stone, Tenn.Ch. App., 57 S.W. 374; Lichter v. Fulcher, 22 Tenn.App. 670, 125 S.W.2d 501; Nashville Union Stockyards, Inc. v. Grissim, 13 Tenn.App. 115; Oliver v. Chapman, 15 Tex. 400; Western Cottage Piano & Organ Co. v. Anderson, 97 Tex. 432, 79 S.W. 516; Id., 45 Tex.Civ.App. 513, 101 S.W. 1061; Mossop v. Zapp, Tex.Civ.App., 189 S.W. 979.

of their product except under the conditions specified in the interlocutory decree.

In our view, the right of the court to restrict the use of color in the beverage depends upon the presence of the element of fraud. It cannot be said that manufacturers of cola drinks are prohibited from the use of the characteristic color in the absence of fraudulent conduct on their part; but if a manufacturer has been found guilty of taking advantage of the similarity in taste and color, and has engaged in acts of unfair competition by encouraging the substitution of its product for that of another, the court is justified in enjoining the imitation unless means are adopted to prevent deception, such as the provision in this case that the beverage be dispensed to the consumer in bottles which will indicate its origin. See Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 200 F. 720, 211 F. 942; Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161.

Under some circumstances, less drastic provision may be sufficient, as was found to be the case in Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161, where the use of chocolate color in connection with a quinine preparation was not enjoined notwithstanding acts of unfair competition, because the court found that deception might be avoided by the use of labels clearly distinguishing the competing products. In the pending case, however, the District Court by its interlocutory decree found that the defendants were guilty of deliberate fraud and considered that the color injunction was necessary to safeguard the plaintiff's rights, and this holding was affirmed by this court on appeal. We find no occasion to depart from that ruling now.

2. In the next place the defendants contend that it was error for the master to allow the plaintiff the sum of $617.92 for the profits derived by the defendants from the sale of their goods to the seven bottlers above described. The master held that the defendants could not escape liability for this sum even though their agents sought to eradicate the evil practices of the tavern keepers unless the defendants received such assurance that their product would be sold properly as an honest man would reasonably require; and he held that the defendants were guilty of unfair competition because they sold their product to bottlers who, to the knowledge of the defendants, resold the same to the tavern keepers who intended to palm off the product for the goods of the plaintiff.

The defendants say that the rule laid down by the master is applicable only to situations where a manufacturer prepares his goods deceitfully, as by simulating the packages or labels of his competitor, so that the purchaser is misled; but that when the manufacturer properly distinguished his goods from others, he is not liable for the tricky conduct of dealers remote from him which he does not aid or encourage and of which he has no knowledge. Decisions bearing on situations of this kind may be found in A. G. Morse Co. v. Walter M. Lowney Co., D.C.N.D.Ill., 256 F. 935; Coats v. Merrick Thread Co., 149 U.S. 562, 13 S.Ct. 966, 37 L.Ed. 847; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Rathbone, Sard & Co. v. Champion Steel Range Co., 6 Cir., 189 F. 26; Royal Baking Powder Co. v. Royal, 6 Cir., 122 F. 337; M. Werk Co. v. Grosberg, 6 Cir., 250 F. 968; cf. Philadelphia Dairy Products v. Quaker City Ice Cream, 306 Pa. 164, 159 A. 3, 84 A.L.R. 466.

The determination of the rights and liabilities of competing manufacturers under such circumstances obviously involves a finding of the facts and the reasonable inferences to be drawn therefrom; and liability may be based upon the failure of the manufacturer to exercise due care to distinguish his product from that of his competitor or upon aid and encouragement given by him to dealers engaged in illicit substitution, or upon his actual intent to defraud, or persistence in a course of conduct which enables dealers to engage in fraudulent passing off. Whether in a case free from fraud on the part of the manufacturer responsibility for such fraudulent acts as were performed by the tavern keepers in this case should rest upon the manufacturer or be confined to the dealers we need not decide, for that case is not before us. It is sufficient here to point out that the defendants have enabled the dealers to engage in fraudulent substitution by violating the injunction decree in that they gave to their goods the distinctive color when they knew or should have known that the purchasers intended to dispose of them to the customers other

than in bottles. The conclusions of the master and the District Court on this phase of the case may be upheld on this ground.

3. The defendants, without expressing an opinion on the subject, offer the speculation as to whether the law of Maryland or the law of the several states in which the acts of unfair competition took place should govern the court in deciding the liability of the defendants and the measure of damages in each instance. The case before us in its present aspect is one of unfair competition and jurisdiction rests on diversity of citizenship. The law to be applied is the law of Maryland, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, including the conflict of laws rule prevailing in the state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; that is to say, we should apply the law of Maryland or the laws of the states where the wrongdoing occurred just as a Maryland court would do if the case were before it.[3]

In the trial below the master accepted the defendants' contention that the Maryland law should be applied in determining the amount of plaintiff's recovery, and it is not now suggested that this was error on his part. It is said, however, that under the Maryland rule recovery should have been limited to profits from such sales as the evidence shows the plaintiff would have made but for the sales of the defendants, and that the master did not follow this rule. The only case cited in support of the argument is that of the Circuit Court No. 2 of Baltimore City in Jacob Carmel et al. v. Jos. Lipnick, et al., 3 Balto. City Reports, 475. The court in that case, without stating the rule prevailing in Maryland, held that under the circumstances before it recovery should be limited to the profits lost by the plaintiff. We agree with the master's view that this decision should not be accepted as showing

that Maryland departs from the general rule that a plaintiff in an unfair competition case may recover the defendant's profits even in the absence of evidence of actual loss or damage. Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; 52 Am.Jur., Trademarks, Tradenames and Trade Practices, § 147; 63 C.J., Trade-Marks, Trade-Names and Unfair Competition, 275.

4. The master allowed the plaintiff the sum of $250 for profits realized by the defendants from the sale of their products under the name or trade mark "Kola". The amount allowed was based on a stipulation of facts by the parties which was received subject to the defendants' objection as to its admissibility. The right to recover for the use of the term was based on the decree of the District Court as modified by this court on appeal. The decree of the District Court enjoined the defendants from using as the name of their beverage or concentrate or syrup for making the beverage the terms Coca-Cola, Marbert Cola, Marbert the Distinctive Cola, Dixie-Cola, Apolo Cola, Lola Kola, Cola or Kola or any other name which includes either the word "Cola" or "Coca". We affirmed this portion of the decree except insofar as it adjudicated an infringement by the use of the names Marbert Cola, Marbert the Distinctive Cola and Dixi-Cola, and except insofar as it prohibited the use of any name which includes the word "Cola" or from supplying the products on calls for "Cola" or from committing any acts calculated to cause its product to be known as "Cola". It was the intention of this court by this holding to exempt from the injunction the words "Kola" and "Cola", because as the opinion shows the word "Cola" has become a generic term and has been in use in common for a long time by manufacturers as part of the particular name of their products; and we stated (117 F.2d at page 359) that no case had come to our

---

[3] We have found no Maryland case expressly stating the Maryland law on this point. However, the Maryland court has in a number of instances allowed recovery under Maryland law for a tort which occurred outside of the state without stating whether the law of the place of injury is the same as or different from the Maryland law. See Young v. Mertens, 27 Md. 114; Baltimore & O. R. Co. v. Davis, 152 Md. 427, 137 A. 30; Miller v. Miller, 165 Md. 425, 169 A. 426.

In cases concerning wrongful deaths, the Maryland court has refused to allow recovery under the wrongful death statute of a foreign state where the death occurred if the statute of such state is dissimilar to that of Maryland. See, Ash v. Baltimore & O. R. Co., 72 Md. 144, 19 A. 643, 20 Am.St.Rep. 461; London Guarantee & Accident Co. v. Balgowan Steamship Co., 161 Md. 145, 155 A. 334, 77 A.L.R. 1302; Davis v. Ruzicka, 170 Md. 112, 183 A. 569.

attention which holds that the word "Cola" cannot be used as part of a name of a beverage provided that the whole name is not confusingly similar to "Coca-Cola". The District Court, however, interpreted our decision as not exempting the word "Kola" or "Cola" from the terms of the injunction, and therefore the allowance of the $250 above described was included in the final decree now under consideration. It may well be that in reviewing the original decree our conclusions on this point are not stated with sufficient clarity, but the mistake must be corrected at this time and the recovery of $250 included in the decree must be reversed.

Affirmed in part; reversed in part; remanded for further proceedings.

### After Reargument

PER CURIAM.

This court granted a rehearing in this case to consider a contention of the defendants that in the opinion filed February 4, 1946 this court gave to § 6(f) of the interlocutory decree of the District Court of March 5, 1940 an interpretation more strict and onerous than the District Judge intended. By § 6(f) of the decree the defendants were enjoined:

"From giving to any part of their merchandise not sold by defendants, their agents or distributors, in bottles to consumers, a color imitating or resembling the color of plaintiff's product, if or when defendants know, or in the exercise of reasonable care should know, that the purchaser thereof intends to dispense such merchandise to the consumer other than in bottles, or intends to bottle the beverage made from such product and to use on the bottles, labels or caps some extrinsic, deceiving element that in conjunction with the color imitating plaintiff's color enables such purchaser to pass off his, her or their product for plaintiff's product."

We quoted this section in our opinion on the first appeal from the interlocutory decree, and approved it as an appropriate method of protecting the Coca-Cola Company from the defendants' practice of encouraging dealers in the fountain trade to pass off defendants' product for Coca-Cola.

We held, in view of the evidence of such practice, that the District Judge was justified in enjoining the defendants, in the manner set out in the quoted section, from giving to their merchandise not sold in bottles to customers the distinctive Coca-Cola color. See 117 F.2d 352, 353, 361. There was no apparent ambiguity in the language in the section of the decree and no one questioned its meaning at the time.

The interval between the interlocutory decree and the final decree of the District Court of March 19, 1945, was consumed in the taking of evidence on damages and profits, and in hearings before the Special Master and the District Judge. At the last hearing before the District Judge the defendants made the contention that the color injunction does not apply or should not apply unless the defendants know or in the exercise of reasonable care should know that the purchaser intends to dispense the merchandise to consumers other than in bottle in response to orders for Coca-Cola. This emendation of the text of § 6(f) of the injunction was approved by the District Judge who held that he was without authority to modify the express language of the decree but nevertheless declared that § 6(f) should be interpreted to read as follows:

"From giving to any part of their merchandise not sold by defendants, their agents or distributors, in bottles to consumers, a color imitating or resembling the color of plaintiff's product, if or when defendants know, or in the exercise of reasonable care should know, that the purchaser thereof intends to dispense such merchandise to the consumer other than in bottles, including dispensing to customers of soda fountains, taverns, restaurants, or bar rooms, *in response to filling orders from any such customers for plaintiff's product*,[1] including orders for use of same as one of the ingredients of a mixed beverage; or intends to bottle the beverage made from defendants' product, and to use on the bottles, labels or caps some extrinsic deceiving element that in conjunction with the color imitating plaintiff's color enables such purchaser to pass off his, her or their product for plaintiff's product".

---

[1] Italics inserted.

Obviously this interpretation lessened the protection afforded the plaintiff by the injunction as originally understood. The change may have been influenced by certain evidence presented by the defendants at the special master's hearing tending to show that since the entry of the interlocutory decree the defendants have ceased to sell their product for distribution at soda fountains and have taken steps in connection with the distribution of their product in bars and taverns to eliminate the passing off of their product for "Coca-Cola". We think, however, that § 6(f) of the decree of March 5, 1940, should have been enforced by the District Court in the proceeding to fix the plaintiff's damages and should have been given the original and obvious meaning attributed to it in the first opinion of this court. Accordingly, we hold that upon the remand of the case in accordance with our last opinion the plaintiff should be given the opportunity to present evidence of violations of the decree as so interpreted. This evidence may be presented in conformity with the ruling that the plaintiff should be given permission to present evidence of illegal acts by the defendants either in the present proceeding or under a supplemental bill as the District Judge in his discretion may determine; but it is not intended that the plaintiff shall be given leave to reopen the case in any respect as to which the opportunity to present evidence has been heretofore accorded in the District Court.

It should, however, be borne in mind that we are dealing in this case with a continuing decree of injunction which, under the established rule, the District Court has power to modify when changed conditions justify such action. See United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. We do not intend by anything said herein to restrict the District Court in the exercise of the power to reconsider the terms of the injunction in this case. It is conceivable that some change should be made with respect to the future conduct of the defendants' business; but the rights of the parties prior to such modification should be determined in accordance with the terms of the original decree as approved by this court and no modification of the decree should be made until the parties have been given an opportunity to present evidence and to be heard with respect to the propriety of the modification.